[Civ. No. 17119. First Dist., Div. One. Sept. 11, 1956.]

JUDSON PACIFIC-MURPHY CORPORATION (a Corporation) et al., Appellants, v. FRANK B. DURKEE, as State Director of Public Works, Respondent; UNITED STATES STEEL CORPORATION (a Corporation), Intervener and Respondent.

Clark, Heafey & Martin and Gerald P. Martin for Appellants.

Edmund G. Brown, Attorney General, E. G. Funke, Assistant Attorney General, Ralph W. Scott, Deputy Attorney General, Robert E. Reed, Holloway Jones, Jack M. Howard and Emerson W. Rhyner for Respondent.

Thomas Ashby for Intervener and Respondent.

PETERS, P. J.—Judson Pacific Murphy-Kiewit, a joint venture corporation,* brought this proceeding to prevent the State Director of Public Works from awarding a steel contract for the new Carquinez Bridge to the American Bridge Division, United States Steel Corporation, the lowest bidder, and to compel the director to award the contract to Judson, the second lowest bidder. It is the main contention of Judson that American Bridge Division, United States Steel Corporation, was not properly licensed and qualified to bid on the work, and that, therefore, the contract should have been awarded to it.

The facts are that on October 14, 1955, the State Department of Public Works, Division of Highways, issued a notice inviting sealed bids for the steel work on the Carquinez Bridge. The notice provided that the bids would be opened on November 30, 1955, and that the award of the contract would be made within nine days thereafter. The notice expressly provided that the contract was conditional upon the issuance and sale of revenue bonds to be issued to finance the project. The bids were opened on November 30, 1955. American Bridge Division, United States Steel Corporation, an operating division of United States Steel Corporation, bid $9,489,126. This was the low bid. Judson's bid, the second lowest bid, was $34,834.48 higher. The other two bids submitted were two and four million dollars, respectively, higher than the lowest bid.

When the bids were opened, Judson orally protested the acceptance and filing of the low bid on the ground that

---

* A joint venture corporation consisting of several California corporations, and hereafter referred to as Judson.

American Bridge Division, United States Steel Corporation, had no contractor's license and therefore could not perform the work. A similar written protest was made by Judson on December 3, 1955.

The low bid reads as follows:

"Name of Bidder: American Bridge Division, United States Steel Corp.

Business Address: 564 Market Street, San Francisco, Calif.

Place of Residence: 525 William Penn Place, Pittsburgh 30, Penna."

The accompanying and required bidder's bond is made out similarly, and has attached to it a required list of officers and directors of the bidder. The list is admittedly that of the officers and directors of United States Steel Corporation. The low bidder also gave the number of its contractor's license as 128593 which admittedly is the contractor's license issued to United States Steel Corporation.

Within the nine days following the opening of bids, the State Highway Engineer requested an opinion of the Registrar of Contractors as to whether the contract could be awarded to the low bidder as named. The registrar referred the inquiry to the attorney general. He ruled that the low bid was valid, and that a contract properly could be awarded to the United States Steel Corporation based upon that bid. Thereupon, the State Highway Engineer recommended to the Director of Public Works that the low bid be accepted and that the contract be awarded to United States Steel Corporation. On December 7, 1955, the director awarded the contract to United States Steel Corporation subject to the condition of the sale of revenue bonds.

On December 8, 1955, Judson filed a petition for mandate and for injunctive relief in an attempt to restrain the director from awarding the contract to United States Steel Corporation, and to compel the director to award the contract to Judson as the next lowest, qualified and responsible bidder.

On December 15, 1955, the United States Steel Corporation, by leave of court, filed a complaint in intervention. It alleged that it is a New Jersey corporation authorized to do business in California; that it was fully qualified and legally authorized to bid on the work here involved; and that it submitted a proper bid. An exhibit to the complaint in intervention is a letter from the Division of Highways to the intervener dated December 7, 1955, awarding the contract to intervener and requiring that such contract be executed in

the name and under the seal of the United States Steel Corporation.

On December 16, 1955, several things occurred. Petitioner was permitted to amend its pleadings by adding a new paragraph, alleging that the bid of American Bridge Division, United States Steel Corporation, was submitted under a contractor's license issued to United States Steel Corporation; that such license qualified United States Steel Corporation to contract by and through its responsible managing employee, C. E. Webb; that petitioner is informed and believes and so alleges that C. E. Webb terminated his employment with intervener about May 19, 1955; that United States Steel Corporation failed to notify the Contractors' State License Board of such termination within 10 days as required by section 7068, subdivision (b) of the Business and Professions Code; that under that section such failure, *ipso facto,* resulted in the suspension or revocation of the license of intervener.

Also on December 16th Durkee, as Director of Public Works, filed a demurrer and a return by way of answer, in which he averred that the bid was received from United States Steel Corporation, and not from any other entity; that American Bridge Division of the United States Steel Corporation is an operating division of the company and not a separate entity; that United States Steel Corporation has a valid license number 128593; that United States Steel Corporation was qualified to bid on construction work in this state.

On the same date, December 16th, petitioner filed an answer to the complaint in intervention in which it made certain denials, and affirmatively alleged that at the time the challenged bid was submitted United States Steel Corporation was not a duly qualified and licensed contractor in this state.

On these pleadings the proceeding was taken under submission by the trial court. On December 21, 1955, the court entered its order denying the petition for a writ of mandate and discharging the alternative writ. Petitioner appeals.

It will be noted that appellant in its petition prays that respondent be ordered to reject intervener's bid and be ordered to award the contract to Judson. It is quite clear that neither the trial court nor this court has the power to order respondent to award the contract to Judson, even if the contract awarded to United States Steel Corporation were a nullity. This is so because the notice to contractors expressly notified prospective bidders that the Director of

Public Works reserved the right to reject any or all bids. Moreover, section 14335 of the Government Code provides that "If the director deems the acceptance of the lowest responsible bid or bids is not for the best interests of the State, he may reject all bids and proceed by day's labor or advertise for other bids in the manner required by this chapter."

It is apparent that were the court to order respondent to award the contract to Judson as the next lowest qualified bidder (assuming, contrary to the fact, that United States Steel Corporation was not qualified), it would be substituting the court's judgment and discretion for those of respondent. Clearly, the call for bids and the law confers on the director the duty of exercising his judgment as to whether it is in the best interests of the state to award the contract to the lowest bidder. The lowest qualified bidder has no legal right to compel the acceptance of his bid. (*Charles L. Harney, Inc.* v. *Durkee,* 107 Cal.App.2d 570 [237 P.2d 561, 31 A.L.R.2d 457]; see also *Stanley-Taylor Co.* v. *Board of Supervisors,* 135 Cal. 486 [67 P. 783]; *Laurent* v. *City & County of San Francisco,* 99 Cal.App.2d 707 [222 P.2d 274].) At the oral argument appellant conceded that this is the law.

The basic question raised by appellant is whether or not the acceptance of the bid by, and the award of the contract to, respondent were proper and valid. The major argument of appellant is that the bid was submitted by the "American Bridge Division, United States Steel Corporation" and that no contractor's license has ever been issued to any such entity, and therefore that bidder is not qualified to do business in California. It is also pointed out that the records of the Registrar of Contractors do not show that the American Bridge Division, United States Steel Corporation, was a part, segment or division of the United States Steel Corporation.

The point is highly technical and without merit. Admittedly, "American Bridge Division, United States Steel Corporation" has no license issued to it. We do know, and of this fact the court can take judicial notice (*McPheeters* v. *Board of Medical Examiners,* 74 Cal.App.2d 46 [168 P.2d 65]) that until late in 1951 the American Bridge Company did have a license. The correspondence between the United States Steel and the Contractors' License Board discloses that late in 1951 United States Steel applied for and received license 128593. Attached to the application for this license

was the information that ". . . on December 31, 1951, the subsidiary operating companies of the United States Steel Corporation will cease doing business as individual and separate organizations, and will merge their activities into that of the United States Steel Company . . ." After listing the subsidiary companies, of which American Bridge Company was one, it is stated: "The former subsidiaries will continue their present identity as operating divisions of the United States Steel Company, with no substantial change in operating personnel or business policy." License 128593 was then issued to United States Steel Company, which designation was later properly changed to United States Steel Corporation.

It is obvious that no serious objection has been or can be made to the manner in which the bid was accepted. If there ever was any doubt as to the identity of the low bidder it is quite clear that it was cleared away before the bid was accepted or the award made. Certainly, it is not a vital defect that United States Steel Corporation elected to submit its bid through one of its operating divisions. No one was misled. The corporation is the legal entity legally responsible for performance of the contractual obligations set forth in the contract. It is true that section 7117 of the Business and Professions Code requires the licensed contractor to act "In the name of the licensee as set forth upon the license," and that failure to do so subjects the licensee to disciplinary action. But such technical violation of the statute does not, *per se*, invalidate the contract.

 It must be remembered that competitive bidding statutes, and those requiring licenses for bidding on public work, are for the benefit of the public and not for the benefit of bidders or licensees. It certainly would amount to a disservice to the public if a losing bidder were to be permitted to comb through the bid proposal or license application of the low bidder after the fact, cancel the low bid on minor technicalities, with the hope of securing acceptance of his, a higher bid. Such construction would be adverse to the best interests of the public and contrary to public policy.

The other contention of the appellant came into the case as an apparent afterthought. The petition for mandate was filed December 8, 1955. The sole points raised in that petition were that the bid had been made by American Bridge Division, United States Steel Corporation, and that that entity was unlicensed, and that the purported acceptance by United States Steel Corporation was invalid. Then on De-

cember 16, 1955, appellant, in open court, was granted permission to add a new paragraph to its petition. ▉ It is there alleged that while United States Steel Corporation is licensed, such license designated one C. E. Webb as the responsible managing employee of the licensee; that on information and belief petitioner alleges that Webb terminated his employment with United States Steel Corporation on May 19, 1955; that the licensee failed to notify the Contractor's State License Board of such termination; that such failure, *ipso facto*, suspended the license under section 7068, subdivision (b) of the Business and Professions Code.

Appellant contends that this allegation was not controverted by respondent and intervener and stands undenied. This is not true. While no specific reference to the paragraph appears in respondent's return, also filed on December 16th, respondent does allege that United States Steel Corporation was the duly qualified and responsible low bidder for the contract. That necessarily constitutes an allegation that intervener's license had not been suspended or revoked.

It should be mentioned that appellant did not make this objection at the time the bids were opened. Nor is it alleged that Judson made any complaint to the Contractors' State License Board, the agency which, by law, has licensing power, and the power to police the industry. The proper procedure for appellant to have followed was to first proceed before the board. ▉ Section 7090 of the Business and Professions Code confers upon the registrar power to investigate the actions of any contractor and to suspend or revoke a license "upon the verified complaint in writing of any person." This is the administrative remedy provided by the statute which appellant should have exhausted before filing its petition. Failure to pursue such an administrative remedy is, of course, in most cases, a bar to court action.

Appellant, while recognizing the rule requiring the exhaustion of administrative remedies, contends that that rule is not here applicable because, so it is argued, section 7068, subdivision (b), of the Business and Professions Code operated to automatically suspend the license of United States Steel Corporation if Webb quit his employment and if the board was not so notified. The section requires the applicant for a contractor's license to show experience and training in the field and provides that a corporation may qualify "by the appearance of the responsible managing officer or member of the personnel" of such corporation. The section

then provides that if the individual qualifying "ceases for any reason whatsoever, to be connected with the licensee to whom the license is issued . . . , the licensee shall notify the registrar in writing within 10 days from such cessation, association or employment. . . .

"If the licensee fails to notify the registrar within the 10-day period, at the end of the period his license shall be *ipso facto* suspended. . . ."

█ It is obvious that this section is not self-executing. The phrase that the "license shall be *ipso facto* suspended" certainly does not mean that without action by the board or the registrar the license is revoked. If that were so, no one could be sure that a firm possessing an outstanding license was in fact licensed. Obviously, the section means that when any of the facts set forth in the section are made to appear to the proper authorities, such authorities shall suspend the license until the failure to comply is remedied and that such suspension shall date back to the date of the offense. The proper authority to determine this point is the registrar. █ Thus, this section does not excuse the failure to allege the exhaustion of the statutory administrative remedy.

But, says appellant, the statute provides that the administrative remedy is not exclusive by conferring on the courts concurrent power to pass on the question. █ In this connection appellant refers us to section 7106 of the Business and Professions Code. That section provides:

"The suspension or revocation of license as in this chapter provided may also be embraced in any action otherwise proper in any court involving the licensee's performance of his legal obligation as a contractor." Section 7106.5 gives the registrar "jurisdiction to proceed with any investigation" even though the matter is pending in a court.

It is clear that this section does not apply to the suspension of a license under section 7068, subdivision (b), of the Business and Professions Code. Section 7106, by its very terms, is limited to cases where the question involved is "the licensee's performance of his legal obligations as a contractor." Problems involving the "performance" of the "legal obligations" of a contractor only arise after the contractor has entered into a contract for the performance of some public work and some dispute has arisen. That is not this case. Certainly, it would be a strange rule of law that would permit a court to suspend or revoke a license in a proceeding such

as the instant one in which the licensee was not even a party until it came in as an intervener. Disciplinary matters, such as a violation of section 7068, subdivision (b), for this reason are left, and should be left, to the licensing board. If United States Steel Corporation did violate section 7068, subdivision (b), obviously such violation was not connected with the "performance" of its "legal obligations" under any contract. ▆▆▆ Thus, the trial court properly determined the proceeding on the pleadings, holding, as a matter of law, that the amended petition did not state a cause of action because of the failure of the pleading to allege that an available administrative remedy had been exhausted.

It should be noted that attached to the intervener's brief are certain appendices which show that on December 15, 1955, one day before the amended petition was filed in the superior court, appellant addressed a letter to the Registrar of Contractors requesting an investigation of the very question here involved. The record shows that the registrar, pursuant to this request, investigated the charge involving Mr. Webb. Under date of April 3, 1956, the assistant registrar notified appellant that the registrar had investigated all of the facts in reference to the Webb matter; and that "The results of this investigation, including affidavits from the licensee and Mr. Webb, were presented to the Attorney General for interpretation and opinion. . . .

". . . that in view of said Opinion, the agency finds no cause to institute a disciplinary action against the United States Steel Corporation as a licensee, and is, therefore, closing the matter."

The opinion of the attorney general states that the office had received the affidavits submitted by United States Steel Corporation "in connection with the possible disassociation of Mr. C. E. Webb as Responsible Managing Employee of the corporation. We cannot say after a review of the record that a disassociation of the Responsible Managing Employee has occurred in this case which would require a notation upon the records of the Contractors' State License Board. We believe that the information contained in the said affidavits would indicate a compliance" with certain designated rules and regulations of the board.

▆▆▆ Thus, the very issue appellant now claims should have been decided by the trial court in this mandamus proceeding has been passed upon by the licensing board. The proceeding before the licensing board was commenced one

day before the issue was raised in the superior court. The licensing board, the agency primarily charged with the duty of policing contractors, on the advice of the attorney general, has found no violation, and so, of course, found no suspension of the license. At the oral argument appellant conceded that it had not appealed from this administrative determination. Any claimed irregularities in that proceeding cannot be corrected on this appeal. These matters are not disputed, and are matters of which this court can take judicial notice.

Thus, even if, contrary to the law, the failure to plead exhaustion of an available administrative remedy was not fatal, and if, contrary to the law, appellant's amended pleading and respondent's return did present an issue of fact which should have been decided by the trial court, we now know that the board charged with the primary duty of making such an investigation, and which has at least concurrent jurisdiction with the courts, in a proceeding started before the issue was raised in a court, has decided the issue and found no violation. Thus, no error was committed by the trial court in failing to find on the issue.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.