[Civ. Nos. 22557, 23269. First Dist., Div. One. Mar. 9, 1967.]

OLD TOWN DEVELOPMENT CORP., Plaintiff and Appellant, v. THE URBAN RENEWAL AGENCY OF THE CITY OF MONTEREY et al., Defendants and Respondents.

(Two Consolidated Appeals.)

Noland, Hamerly, Etienne & Fulton and Henry B. Fulton for Plaintiff and Appellant.

Richard J. Dormody, Eugene B. Jacobs and Donald H. Smith for Defendants and Respondents.

SIMS, J.—Old Town Development Corp., a corporation, has appealed from adverse rulings in each of two actions it instituted against The Urban Renewal Agency of the City of Monterey and others. Each action involves the legality of the identical redevelopment procedures and activities in which the agency engaged, and the appeals were ordered consolidated for hearing on motion of the agency.

In the first action (No. 57735) Old Town sought a peremptory writ of mandate commanding the agency and its five members (1) to rescind a resolution concerning qualification of developer proposals which disqualified all proposed developers except one of Old Town's competitors, (2) to rescind a resolution providing for a public hearing concerning proposed land disposition within the Custom House Redevelopment Project area, and (3) to comply with the provisions of the Brown Act (Gov. Code, §§ 54950-54960). The prayer also sought $100,000 damages and costs. Old Town served its petition for writ of mandate and its notice of motion for peremptory writ of mandate upon the agency and four of its members. The agency filed an answer, demurrer and the affidavit of the other member, its chairman. The matter came on for argument and a minute order was entered which recites: "the Court denies the Petition upon the grounds that Petitioner has not exhausted all administrative remedies." The demurrer was thereafter dropped from the calendar. The first appeal (1 Civ. 22557) is from the order denying the petition. (See *Steen* v. *Board of Civil Service*

*Comrs.* (1945) 26 Cal.2d 716, 727-728 [160 P.2d 816]; and *Wenzler* v. *Municipal Court* (1965) 235 Cal.App.2d 128, 129-130 [45 Cal.Rptr. 54]; but cf. *Brice* v. *Department of Alcoholic Beverage Control* (1957) 153 Cal.App.2d 315, 318 [314 P.2d 807].)

Some months later, Old Town filed its complaint for damages (No. 59255) against the agency, its five members, its director and a consultant whose activities are alleged to have violated laws and regulations designed to avoid or reveal conflicts of interest. In this action Old Town, as assignee of Fluor-Old Town, a joint venture which submitted a redevelopment proposal to the agency, seeks to recover $103,736.41 special damages for the costs of preparing the proposal and $200,000 general damages. The defendants, without otherwise pleading, gave notice of a motion for judgment on the pleadings (see *Dias* v. *California Employment Stabilization Com.* (1952) 113 Cal.App.2d 374, 375 and 382 [248 P.2d 427]) which was predicated not only upon the complaint for damages, but also upon the records of the aforementioned mandamus proceeding and of an even earlier proceeding in which Old Town had sought a writ of mandate.[1] The matter came on for hearing on defendants' motion and plaintiff's points and authorities and a minute order was entered indicating that the motion was granted. Old Town appealed from the minute order. This appeal must be dismissed as an appeal from a nonappealable order. (*Budrow* v. *Wheatcraft* (1953) 115 Cal.App.2d 517, 522 [252 P.2d 637]; and see *Stevens* v. *Key Resistor Corp.* (1960) 186 Cal.App.2d 325, 326 [8 Cal. Rptr. 908]; 3 Witkin, Cal. Procedure (1954) Appeal, § 20, p. 2163, and *id.*, §§ 119-120, pp. 2294-2296.) Thereafter, a formal judgment was entered and a subsequent notice of appeal gave rise to the proceedings now before this court (1 Civ. 23269).

*The Facts*

A synthesis of the facts alleged, and those which are properly before this court through augmentation of the record to include the proceedings in action No. 57705 (fn. 1) and the

---

[1]That action (No. 57705) was commenced by a petition for writ of mandate which contained substantially the same allegations as those in the subsequent petition (No. 57735). The prayer sought a writ (1) commanding respondents, the agency and its members, to submit to prospective developers an invitation for proposals in accordance with the redevelopment law; (2) enjoining them from taking any further action under

"Developer's Packet," which is referred to in the petition and complaint, reveals the following:

The Urban Renewal Agency of the City of Monterey is an agency organized and existing under the Community Redevelopment Law of the State of California (Health & Saf. Code, div. 24, part I, §§ 33000-33714, as recodified by Stats. 1963, ch. 1812, p. 3677) as an agent and agency of the City of Monterey, and the city council of that city is the legislative body referred to in the governing law. The five individuals who are named both as respondents in the mandamus proceeding and as defendants in the complaint for damages are the members, or governing body of the agency. The complaint also names as defendants the executive director of the agency and D. Jackson Faustman.

At all of the times referred to Faustman was employed by the City of Monterey to make a traffic study of the city, and in particular of the Custom House Redevelopment Project and its effect on the city.

On June 12, 1962, the City Council of the City of Monterey recorded a previously adopted urban redevelopment plan which embraced the area referred to as the Custom House Redevelopment Project area. (See §§ 33360-33376,[2] formerly, pre-1963, §§ 33730-33749.)

Prior to May 20, 1964, the agency distributed to prospective developers, for a fee of $50, a so-called "Developer's Packet" containing all of the conditions and qualifications pertaining to proposals by prospective developers of the Custom House Project for the purchase and redevelopment of the property embraced in that project pursuant to the adopted redevelopment plan. The "Invitation for Proposals"

the proposal which it had found qualified; and (3) commanding respondents to comply with the provisions of the Brown Act. It also sought $100,000 damages and costs. An alternative writ was issued upon the filing of the petition. At the hearing on the date set in the alternative writ the respondents questioned the right of Old Town, the corporation, to sue as the assignee of a fictitious entity, Fluor-Old Town, a joint venture. The transcript of the hearing reflects that the court treated the matter as a civil suit for an injunction and ordered the proceedings abated until Fluor-Old Town, as the assignor of the petitioner, complied with the provisions of sections 2466 and 2468 of the Civil Code. The minute order and a written order filed the same day do not, however, correctly indicate what entity had failed to file the certificate of doing business under a fictitious name. The record of those proceedings is before this court, pursuant to a stipulation and order so providing.

[2]All references, unless otherwise indicated, are to the provisions of the Community Redevelopment Law (Stats. 1963, ch. 1812, p. 3677) as presently found in the Health and Safety Code.

which directed attention to the availability of the "Developer's Packet" and was also made a part thereof, further indicated that the agency would also consider proposals regarding an alternative plan which was then under study by the city, by its planning commission, and by the agency, but which admittedly could not be carried out until the adopted redevelopment plan was amended to conform to it.

On January 17, 1964, Custom House Associates, a joint venture, furnished the agency with a prequalification statement in which it listed D. Jackson Faustman as one of its principal associates and consultants, and as the parking consultant it anticipated it would utilize if selected as the successful bidder.

On April 30, 1964, Custom House Associates, which has not been made a party in any of the actions initiated by Old Town, submitted its proposal to the agency. This proposal did not contain a proposal for redevelopment in accordance with the adopted redevelopment plan, but only set forth a proposal for redevelopment in accordance with the alternate plan, with some modifications which admittedly were not material. The proposal also included a statement, similar to that dated January 17, 1964, listing Faustman's connection with the developer.

Prior to the deadline, which had been extended to May 20, 1964, two additional proposals were filed with the agency including that of Fluor-Old Town, a joint venture composed of Fluor Properties, Inc., and Old Town Development Corp. Fluor-Old Town was the only developer that submitted a proposal on the adopted redevelopment plan. It, as did both of its competitors, submitted a proposal on the alternate plan and it also submitted an expanded plan of its own as a guide to project improvement. It is alleged that Fluor-Old Town's proposals for both the adopted and alternate plan qualified under all the terms and conditions of the Developer's Packet; that its proposal under the adopted plan was the only qualified proposal; and that it objected to the submission of proposals for redevelopment based on the alternate plan as being contrary to law.

Following the receipt of the proposals the agency appointed a panel of experts to review the qualifications of prospective developers and study and render advice concerning the three proposals of developers to purchase and build upon the land

offered in the project area. Faustman was listed as a panel member and served as such.[3] The review panel of experts rendered its advice at a public hearing of the agency on June 8, 1964. The agency merely received the report of the experts but did not discuss it on that date.

On June 10th, at a joint public study session of the City Council of Monterey and the agency, the chairman of the agency stated, in effect, that further discussion relative to the merits of the three developers was made unnecessary by prior telephone contact by the chairman with other members which resulted in a decision to accept the proposal of Custom House Associates as the only qualified proposal. It is alleged that between June 8 and 10, 1964, the agency and its members held a meeting, or meetings, relating to the matters awaiting decision in violation of the Brown Act.

On June 12, 1964, the agency refused to make a finding, consider or take action on the alleged conflict of interest pertaining to Faustman as disclosed from the official records of the agency then under consideration. On that day, allegedly without any public discussion of qualifications, the agency adopted its resolution No. 227 in which it determined that the proposal of Custom House Associates was the only qualified proposal. The resolution authorized the secretary to notify Fluor-Old Town and the other developer that their respective proposals were not qualified, and to return to them their good faith deposits.

Three days later the agency adopted its resolution No. 228 providing for a public hearing concerning proposed land disposition. The same day the executive director of the agency wrote Old Town Development Corp. advising it of the decision made June 12th and returning the bid deposit. A copy of the letter was sent to Fluor Properties, Inc.

On July 6, 1964, Fluor-Old Town, in a letter to the agency, set forth its objections to the procedures which had been followed.

---

[3] A transcript of the meeting at which this panel made its report, which is appended to appellant's reply brief, lists the panel members as the Executive Directors of the respective Redevelopment Agencies of San Francisco and Santa Clara, the Dean of Architecture, Massachusetts Institute of Technology, an architect, an economic consultant, a certified public accountant, the urban renewal advisor of the City of Monterey, and Faustman, designated as City of Monterey Traffic Consultant. The two city advisors had no vote, but their influence on the decisions of the panel was acknowledged.

On August 4, 1964, Old Town Development Corp. filed its first petition for writ of mandate, No. 57705 (see fn. 1).

On August 7, 1964, it filed its second petition for writ of mandate, No. 57735, which is the subject of the first appeal before this court. In this petition Old Town Development Corp., the petitioner, alleges it is the assignee of Fluor-Old Town.

According to the allegations of the complaint for damages, the claim asserted therein was assigned to Old Town by the joint venture on or about August 10, 1964.

About September 16, 1964, Old Town served its claim for $303,736.41 damages upon the agency, its members, its executive director and Faustman.

On April 28, 1965, the complaint for damages, No. 59255, was filed. It is alleged that Fluor-Old Town, the assignor, has complied with the provisions of sections 2466 and 2468 of the Civil Code.

The petition and complaint are replete with references to pertinent legal principles and contain conclusions as to the effect of these principles on the facts of the case. The conclusions expressed in these allegations will be referred to in the discussion of the legal issues. Additional facts concerning the documents mentioned in the pleadings, which have been brought before the court, will also be found in that discussion.

*The Issues*

In the mandamus proceeding relief is sought on the grounds that certain acts of the agency are illegal and void, and an abuse of discretion. The specific points of complaint are: (1) the determination that the proposal of Custom House Associates was the only qualified proposal despite that developer's failure to submit a proposal on the only adopted redevelopment plan; (2) the failure to select Fluor-Old Town when it was the only developer that had submitted a proposal on that plan; (3) the invalidity of the action taken on June 12, 1964, because of conflict of interest of Faustman; (4) the invalidity of that action because of violations of the Brown Act; and (5) the invalidity of the resolution adopted on June 15, 1964, because of the alleged irregularities which preceded it, and because it was inconsistent with the only authorized redevelopment plan.

In the complaint for damages, recovery is predicated upon the theory that the special and general damages allegedly suffered by Old Town's assignor were the proximate result of the first four alleged irregularities.

Interspersed with the foregoing issues are questions raised by the application to the facts of this case of the principles for the granting of relief in mandamus, and the principles for recovery in contract or tort from a governmental agency.

*The Right to Proceed on the Alternate Plan*

One of Old Town's contentions that the proceedings taken by the agency are illegal and void, or are an abuse of discretion, is predicated upon the principle that the agency has no power to proceed except in accordance with the provisions of an adopted redevelopment plan.

Section 33372, which is one of the sections dealing with the procedure for adoption of redevelopment plans by the legislative body, provides: "Upon the filing of the ordinance adopting the redevelopment plan with the clerk or other appropriate officer of the legislative body, a copy of the ordinance shall be sent to the agency, and *the agency is vested with the responsibility for carrying out the plan.*" (Italics added.)

The disposition of property is governed by the provisions of article 11, of chapter 4, of the Community Redevelopment Law (§§ 33430-33445). Section 33432 provides: "An agency shall lease or sell all real property acquired by it in any project area, except property conveyed by it to the community or any other public body. *Any such lease or sale shall be conditioned on the redevelopment and use of the property in conformity with the redevelopment plan.*" (Italics added.)

The provisions of the foregoing sections appear to preclude the agency from disposing of any property except in accordance with the terms of an approved redevelopment plan. It may be assumed that such a disposition, or the immediate irrevocable threat of such disposition would be open to legal attack. However, the facts presented in this case fail to demonstrate that the agency was proceeding in an unauthorized fashion. Two salient considerations compel this conclusion.

In the first place, "Any lease or sale made pursuant to Section 33430 [which grants the agency the power to dispose

of property] may be made without public bidding but only after a public hearing, . . ." (§ 33431.)

Secondly, section 33450 provides: "If at any time after the adoption of a redevelopment plan for a project area by the legislative body, it becomes necessary or desirable to amend or modify such plan, the legislative body may amend such plan upon the recommendation of the agency." The procedure for effecting such amendment is set forth in sections 33451 through 33456.

Examination of the "Invitation for Proposals" and the "Developer's Packet" reveals that there was no firm solicitation for bids for the purchase of the property, but that the agency reserved the right to determine which developer or developers it deemed qualified, the right to negotiate with whomever it selected and the right to consider, to negotiate concerning, and to secure the adoption of, amendments to the redevelopment plan previously approved.

The "Invitation for Proposals" states: "The . . . Agency . . . will receive proposals . . . for the purchase and redevelopment of property located within the Custom House Redevelopment Project. . . . The Agency has acquired, or will acquire those properties shown on . . . 'Exhibit A,' . . . and will dispose of the property for the established land uses in accordance with the [adopted redevelopment plan and the restrictions recorded thereunder (see §§ 33336 and 33439, and former § 33741)].

"In addition to the above, the . . . Agency . . . will consider proposals regarding the parcels set forth in Exhibit 'B' [the alternate plan], which disposal plan is more fully set forth in instructions to bidders.

". • • • • • • • • • •

"Acceptance and rejection of proposals will be subject to the conditions set forth in the 'Instructions for Submitting Proposals.' "

The plan, which was adopted by City of Monterey Ordinance No. 1255 C.S., on July 5, 1961, and which was subsequently recorded as alleged by Old Town, is set forth in the packet. It provides: "the Agency shall dispose of the Project land by negotiated sale, by bid, by lease, or by auction, or by any combination of these methods which it shall find to be in the best interests of the City. Acceptance by the Agency of offers to purchase or otherwise acquire shall be based upon

qualifying factors of extent of purchase offered, time of offering, financial responsibility of the developer and the merits of the development proposed in conformity with this Plan." (§ 806, portion.) It further recites: "The Plan may be amended in the manner provided by Section 33747 [now §§ 33450-33456] of the State Law. . . ." (§ 906, portion.)

The packet then sets forth maps and parcel data for both the adopted plan and for the alternate plan. Other topics covered are "Marketability Data," "Conflicts of Interest" (see, *infra*), "Goals and Objectives," "Miscellaneous" and "Instructions for Submitting Proposals." These are followed by various forms to be used in connection with the proposals and in subsequent proceedings to effect the disposition of the property.

The instructions state in pertinent part: "I. METHOD OF OFFERING: The Agency is making the land available for redevelopment on a competitive basis with prequalification of redevelopers.

"II. PREQUALIFICATION: The Agency will not receive for consideration either the offer to purchase or the dollar bid of a developer before the Agency has first notified the developer of his successful prequalification. Prequalification of developers shall be governed by the following procedure: . . ."

The procedure contemplated that the developer would "A" first file data concerning itself, and "B" subsequently submit "Maps, plans, data, and narrative explanations . . . concerning the proposed development in sufficient detail to determine whether or not the proposed development meets the objectives set forth in the Agency's statement of 'Goals and Objectives', and the technical specifications and land use provisions of the Redevelopment Plan and Exhibits 'A' and 'B' herein contained. . . ." The necessity of amending the adopted plan to carry out the alternative plan was clearly pointed out in a footnote.[4]

---

[4]This footnote read: "It has been proposed that the adopted Urban Renewal Plan for the Custom House Project Area be amended in the form and manner shown in Exhibit 'B' herein for the purpose of incorporating a depressed roadway for better traffic circulation throughout the area, which in turn would create other available lands within the Project Area for redevelopment. The City Council of the City of Monterey, together with the Planning Commission and the Urban Renewal Agency thereof, are, at the present time undertaking studies to determine whether there is sufficient economic and aesthetic benefit to the community to warrant such an amendment. The redeveloper is invited to make a submission based on the proposal as set forth in Exhibit 'B' as well as on

Under date of March 16, 1964, the agency released an addendum to the instructions which notified the developers that the agency had passed a resolution setting a date for a public hearing on an amendment to the adopted redevelopment plan which would conform to the alternate plan. On April 28th, a subsequent addendum advised the developers that the proposed hearing had been reset from May 18th to July 20th.

Limitations on the type and extent of material to be submitted were expressly set forth. A deposit of 5 percent of the minimum land price was required. The respective dates for the submission of the preliminary data, the materials concerning the proposed development, and the deposit were each extended to May 20, 1964.

The instructions continue as follows: "III. REVIEW AND EVALUATION OF PROPOSALS FOR PREQUALIFICATION: Review, evaluation, and determination of qualifications shall be the exclusive responsibility of the Urban Renewal Agency of the City of Monterey, with the advice of any consultants it may retain. Determinations of prequalifications will be influenced by the objective of the Agency to see as much of the Project Area as possible developed under one sponsorship. The Agency will review all proposals in accordance with the following additional criteria: . . ." There follow descriptions of five different criteria adopted by the agency. "IV. NOTICE OF ACCEPTABILITY IN PREQUALIFICATION: On or before [the original date was deleted by amendment, and arrangements were subsequently made for a public display on May 25, 1964, and a public meeting June 7, 1964, apparently continued to June 8, 1964], the Agency will notify all proposers of the acceptability or non-acceptability of the proposals submitted. With the prequalification of two or more proposals, selection of the

the Adopted Plan (set forth in Exhibit 'A') so that in the event the studies determine that it be in the best interest of the City and the Urban Renewal Agency to amend the Plan, and public hearings are held and it is further determined to be of the best interest of said City and Agency, the Plan may thereby be amended and the redeveloper may proceed on such proposal. It is felt that by giving the redeveloper the opportunity to so propose it will offer to the redeveloper greater latitude in potential development at an early date. By making a proposal based upon the parcels as set forth in Exhibit 'B', and in the form and manner of that Exhibit, the redeveloper shall and hereby does consent and agree to carry out said proposal in the event that he is successful in his offer for purchase and in the event that said amendment shall occur within the next eighteen (18) months from the date of acceptance of the offer by the Urban Renewal Agency."

developer will be based on competitive bidding. Notice of the time and place, together with all other pertinent data as to the procedure of the bidding will be mailed to all successful proposers.

"V. Acceptance of Proposals: All determinations by the Agency shall be final and conclusive and shall not be subject to review, except as provided for in Ordinance 1255 C.S. of the City of Monterey. The Agency shall reserve the right to reject any and all proposals in whole or in part, or to discuss further with any developer submitting a proposal, any changes in his proposal. The Agency further reserves the right to waive any informalities or defects as to form or procedure.

"VI. Award of Bid: The Agency shall award the contract to the highest bidder. If there is only one bidder, the land will be sold to him at the established minimum price."

█ Old Town has failed to show that there was any mandatory duty on the agency to accept its proposal, any mandatory duty to reject the qualifications of Custom House Associates because they failed to submit a proposal for the adopted plan, or any mandatory duty to refrain from having a public hearing concerning the proposed disposition of land to the qualifying developer. It will not be presumed that the agency, in violation of law, would attempt to dispose of the property in conformity with the alternate plan, prior to its approval by amendment of the adopted plan in the manner provided by law.

*Conflict of Interest*

Section 33130 provides, in part, as follows: "No agency or community officer or employee who in the course of his duties is required to participate in the formulation of or to approve plans or policies for the redevelopment of a project area shall acquire any interest in any property included within a project area within the community. If any such officer or employee owns or has any direct or indirect financial interest in such property, he shall immediately make a written disclosure of it to the agency and the legislative body which shall be entered on their minutes. Failure to so disclose constitutes misconduct in office."

The part of the "Developer's Packet" entitled "Conflicts of Interest" sets forth the foregoing provisions, and, as well the provisions of a contract between the agency and the

United States of America,[5] and the provisions of the charter of the City of Monterey.[6] The packet also directs attention to the provisions of sections 1090, 1092, 36525 and 36527 of the Government Code and pertinent case law.

█ Old Town asserts that the alleged dual employment of Faustman by the city and by Custom House Associates, and his selection as a member of the review panel of experts vitiates all the proceedings which are under attack here.[7] It alleges on the one hand that there has been no disclosure of the conflict of interest by Faustman to the agency or to the city, and on the other hand acknowledges that his past and

[5]These provisions are: "(A) *Local Public Agency Personnel.*—The Local Public Agency will adopt and enforce measures appropriate to assure that no member of its governing body and no other officer or employee of the Local Public Agency who exercises any functions or responsibilities in connection with the carrying out of the Project shall, prior to the completion of the Project, voluntarily acquire any personal interest, direct or indirect, in any property included in the Urban Renewal Area, or in any contract or proposed contract in connection with the undertaking of the Project. If any such member, officer or employee presently owns or controls, or in the future involuntarily acquires, any such personal interest, he shall immediately disclose such interest to the Local Public Agency. Upon such disclosure such member, officer or employee shall not participate in any action by the Local Public Agency affecting the undertaking of the Project unless the Local Public Agency shall determine that, in the light of such personal interest, the participation of such member in any such action would not be contrary to the public interest. The Local Public Agency will promptly advise the Administrator of the facts and circumstances concerning any disclosure of interest made to it pursuant to this subsection.

"(B) *Other Local Public Officials.*—The Local Public Agency will adopt and enforce measures appropriate to assure that no member of the governing body of the locality in which the Urban Renewal Area is situated, and no other public official of such locality, who exercises any functions or responsibilities in the review or approval of the carrying out of the Project shall, prior to the completion of the Project, voluntarily acquire any personal interest, direct or indirect, in any property included in the Urban Renewal Area, or in any contract or proposed contract in connection with the undertaking of the Project."

[6]These provisions are: "ILLEGAL CONTRACTS: No officer or employee of the city shall be or become directly or indirectly interested in any contract, work, or business, or in the sale of any article, the expense, price, or consideration of which is payable from the city treasury, nor shall he receive any gratuity or advantage from any contract or person furnishing labor or material for the same. Any contract with the city in which any officer is or becomes interested may be declared void by the Council. . . ."

[7]The petition for writ of mandate also alleges that there is another employee of the agency, who, the petitioner is informed and believes, has been and will be utilized as a planning consultant by Custom House Associates; and that he has not disclosed any conflict of interest to the agency or the city. These allegations were not repeated in the damage action. Since this charge is subject to the same comments as those addressed to the alleged conflict of interest of Faustman it is not separately treated.

potential relationship with Custom House Associates has been fully disclosed to the agency in the Associates' proposal.

The decision of the agency to qualify only Custom House Associates was made by it. The review panel only offered recommendations, which the agency was free to adopt or reject in the exercise of its own discretion. Faustman's alleged dual interest as consultant for the city and the developer was known to the agency, and it must be deemed that his opinions were weighed in the light of that knowledge.[8]

Even if it be assumed that Faustman be deemed to have been a participant in the decision made by the members of the agency, the provisions relied upon do not invalidate that action. The city will have the final approval of the decision in regard to the disposition of the property. (§ 3371, and City of Monterey Ordinance No. 1255 C.S., § 8.) Petitioner has so alleged. The city council, under the terms of its ordinance, can determine whether to ratify or disaffirm the allegedly tainted action of the agency.

*In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21 [37 Cal.Rptr. 74, 389 P.2d 538], considered the provisions of section 33130 as formerly embodied in section 33236. It was concluded that the agency chairman's disclosure of his interest in property within the project area satisfied the requirements of that statute (61 Cal.2d at pp. 66-67).

Any breach of the contract between the agency and the federal government is a matter to be evaluated by those parties, and is not at issue in these proceedings.

An examination of the provisions of the Government Code, to which reference has been made, reveals: "... No such contract may be avoided because of the interest of an officer therein unless such contract is made in the official capacity of such officer, or by a board or body of which he is a member." (Gov. Code, §§ 1092 and 36527; and cf. *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569-570 [27 Cal.Rptr. 441, 375 P.2d 289].) It is not shown or claimed that Faustman participated in the adoption of the resolutions under attack, in an official capacity, as a member of the board or body taking the action. The most that can be gleaned from Old Town's allegations is that he was a consultant involved on both sides of the contro-versy. █ The mere existence of such dual employment is

---

[8]The extra-record account of the panel's presentation which Old Town has made part of its brief fails to reflect that Faustman subordinated the other members to his will to the exclusion of the exercise by each of his independent judgment.

not sufficient alone to vitiate a contract to which the consultant is not a party. (See *Raisch* v. *Sanitary Dist. No. 1* (1952) 108 Cal.App.2d 878, 881-890 [240 P.2d 48].)

The alleged acts of Faustman do not furnish grounds to invalidate the proceedings of the agency.

*Violations of the Brown Act*

 Government Code section 54953 provides in part: "All meetings of the legislative body of a local agency shall be open and public, . . ." There is no allegation that the "action taken" (see Gov. Code, § 54952.6) in adopting each of the resolutions in question was not at a public meeting. Insofar as the allegations suggest that there was "a collective commitment or promise by a majority of the members of [the agency] to make a positive or negative decision" on the matters in question, in violation of the Brown Act, it would not invalidate the action subsequently taken.

"Plaintiff's contentions regarding purported violations of the Brown Act, which in effect proscribes secret meetings of any legislative body in the state, are unavailing, because, even if true, the ordinance would not be invalidated. (See *Adler* v. *City Council of Culver City*, 184 Cal.App.2d 763, 774-775 [7 Cal.Rptr. 805].)" (*Claremont Taxpayers Assn.* v. *City of Claremont* (1963) 223 Cal.App.2d 589, 593 [35 Cal.Rptr. 907].)

*Right to Writ of Mandate*

From the foregoing it is apparent that there is no warrant for the issuance of a writ of mandate for the purpose of commanding the performance of any legal duty, the setting aside of any illegal act, or preventing any threatened breach of legal duty on the part of the agency or its members.[9] (Cf. *May* v. *Board of Directors* (1949) 34 Cal.2d 125, 133-134 [208 P.2d 661].)

 Old Town also contends that its allegations demonstrate an abuse of discretion on the part of the agency and its members. Under the prodding of respondents, Old Town is

---

[9]The Brown Act (Gov. Code, § 54960) provides: "Any interested person may commence an action either by mandamus or injunction for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency." Although the allegations contained in the petition and complaint suggest prior violations of the act, they do not evince that such violations are continuing or threatened in the future. Under these circumstances it is not an abuse of discretion to deny relief.

equivocal as to whether it seeks a remedy under the provisions of section 1085 or of section 1094.5 of the Code of Civil Procedure.

*In re Redevelopment Plan for Bunker Hill, supra,* 61 Cal.2d 21, answered this question by pointing out that even under section 1094.5 the substantial evidence rule applies to administrative bodies which are not statewide in scope. "Thus, it becomes immaterial whether the actions of the agency and of the city council in adoption of the Bunker Hill project be termed 'legislative' [citation], or 'administrative' [citation]; in either event the trial court was correct in its refusal to reweigh the evidence and in confining itself to determining whether the findings and determinations of the inferior bodies were supported by substantial evidence. [Citation.]" (61 Cal.2d p. 40, see pp. 37-41; accord: *Berggren* v. *Moore* (1964) 61 Cal.2d 347, 349 [38 Cal.Rptr. 722, 392 P.2d 522].)

In *Bunker Hill* the court approved the following: "The agency and the legislative body (city council) have authority to designate redevelopment areas, and a court is not empowered to substitute its determination for the determination of the agency or the legislative body in the absence of abuse of discretion, fraud, collusion, or bad faith on the part of the agency or the legislative body." (*Babcock* v. *Community Redevelopment Agency* (1957) 148 Cal.App.2d 38, at p. 49 [306 P.2d 513], as quoted 61 Cal.2d at p. 38; see also *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832-835 [27 Cal.Rptr. 19, 377 P.2d 83]; *Faulkner* v. *California Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 P.2d 659]; *Bowles* v. *Antonetti* (1966) 241 Cal.App.2d 283, 286 [50 Cal.Rptr. 370]; *Baldwin-Lima-Hamilton Corp.* v. *Superior Court* (1962) 208 Cal.App.2d 803, 813-814 [25 Cal.Rptr. 798]; *Brock* v. *Superior Court* (1952) 109 Cal.App.2d 594, 598-606 [241 P.2d 283].)

Old Town concedes that it must establish a right to relief within the principle laid down in *Brock,* where it is said: "it must be held that the de novo type of review does not apply to quasi-legislative acts of administrative officers and that the judicial review is limited to an examination of the proceedings before the officer to determine whether his action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether he has failed to follow the procedure and give the notices required by law." (109 Cal.App.2d at p. 605,

quoted with approval in *Pitts* v. *Perluss, supra,* 58 Cal.2d 824, at p. 833.)

The facts and law discussed above reveal that the agency had authority to commence proceedings to amend the adopted plan at any time. The "Invitation for Proposals" and "Developer's Packet" clearly indicated that it was contemplating exercising its discretion to so proceed; and that it would do so if the studies then undertaken, which presumably would include consideration of the proposals submitted under the alternate plan, reflected that there was "sufficient economic and aesthetic benefit to the community to warrant such an amendment" (see fn. 4).

The agency also had the authority to dispose of the property without public bidding (§ 33431; and see *Davis* v. *City of Santa Ana* (1952) 108 Cal.App.2d 669, 677-678 [239 P.2d 656]; and *Swanton* v. *Corby* (1940) 38 Cal.App.2d 227, 229 [100 P.2d 1077]). ■ Although it invited proposals on a competitive basis it reserved the right to determine the prequalification of any developer submitting a proposal, and the right "to reject any and all proposals in whole or in part." It exercised its discretion in determining that Custom House Associates was the only qualified developer. Even if it erred in so doing, since it could have rejected the bid of Fluor-Old Town even if qualified, that developer has no legally cognizable cause for complaint. (*Stanley-Taylor Co.* v. *Supervisors* (1902) 135 Cal. 486 [67 P. 783]; *Judson Pacific-Murphy Corp.* v. *Durkee* (1956) 144 Cal.App.2d 377, 381-382 [301 P.2d 97]; *Laurent* v. *City & County of San Francisco* (1950) 99 Cal.App.2d 707, 710-711 [222 P.2d 274]; and see *Baldwin-Lima-Hamilton Corp.* v. *Superior Court, supra,* 208 Cal.App.2d 803, 816-817; and *Charles L. Harney, Inc.* v. *Durkee* (1951) 107 Cal.App.2d 570, 575 and 580 [237 P.2d 561, 31 A.L.R.2d 457].)

■ The questions raised were within the scope of the discretion of the agency to determine. The trial court properly refused to issue a writ of mandamus to interfere with the proceedings taken by the agency in the exercise of that discretion. (*Faulkner* v. *California Toll Bridge Authority, supra,* 40 Cal.2d 317, 329; *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; *Bowles* v. *Antonetti, supra,* 241 Cal.App.2d 283, 286-287; *Monarch Cablevision, Inc.* v. *City Council* (1966) 239 Cal.App.2d 206, 210-211 [48 Cal.Rptr. 550]; *Babcock* v. *Community Redevelopment*

*Agency, supra,* 148 Cal.App.2d 38, 51; *Redevelopment Agency* v. *Hayes* (1954) 122 Cal.App.2d 77, 798 and 811 [266 P.2d 105]; *Wilson* v. *Los Angeles County Civil Service Com.* (1951) 103 Cal.App.2d 426, 432 [229 P.2d 406].)

■ "Allegations that the acts of a commission or board were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law which are not to be deemed admitted by a demurrer." (*Faulkner* v. *California Toll Bridge Authority, supra,* 40 Cal.2d at p. 329, and see p. 330.)

■ *Baldwin-Lima-Hamilton Corp.* v. *Superior Court, supra,* 208 Cal.App.2d 803, recognizes that although the unsuccessful bidder cannot secure the contract for himself, he may attack the proceedings to award the contract to the low bidder where the prior proceedings are defective: "The awarding of a contract by a public official pursuant to specifications which are illegal and invalid and which fail to provide for full and fair competitive bidding, is, we think an abuse of discretion. It is within the power of the respondent superior court to determine whether or not an abuse of discretion exists in the instant case. While mandamus will not lie to control the discretion exercised by a public officer or board [citations] it will lie to correct an abuse of discretion by such officer or board. [Citations.]" (208 Cal.App.2d at p. 823.)

This principle does not assist Old Town. In *Baldwin* the opinion directs attention to the fact that if the illegal proceedings are set aside the bidders will have an opportunity to rebid on a competitive basis. (208 Cal.App.2d at p. 824.) In the instant case each developer had an equal opportunity to submit a proposal on the alternate plan. If the proceedings are set aside, to be renewed after the city approves the amendment necessary for the alternate plan, it would only serve to delay a selection already made, or give Fluor-Old Town an unfair competitive advantage by providing it with an opportunity to revise and upgrade its plans.

Furthermore, there has been no award of any contract. If there is any abuse of discretion in what amounts to an abandonment of the contemplated, but not mandatory, bidding procedure, and by the negotiation with one of the developers on a yet unapproved amendment to the plan, it may be directed to the attention of the legislative body—the city council—at the time it is called upon to approve an amendment to the plan it previously adopted (§§ 33454-

33455), or when it is faced with the question of approving a final disposition of the property. (§ 22271, City of Monterey Ordinance No. 1255 C.S., § 8; and see §§ 33431 and 33434.)

The trial court properly determined that Old Town had failed to exhaust its administrative remedies. (*Lynn* v. *Duckel* (1956) 46 Cal.2d 845, 848-850 [299 P.2d 236]; *Metcalf* v. *County of Los Angeles* (1944) 24 Cal.2d 267, 269 [148 P.2d 645]; *United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194 [120 P.2d 26]; *Fiscus* v. *Department of Alcoholic Beverage Control* (1957) 155 Cal.App.2d 234, 236-237 [317 P.2d 993]; *Judson Pacific-Murphy Corp.* v. *Durkee, supra,* 144 Cal.App. 2d 377, 386.)

No grounds are found for the issuance of a writ of mandate as requested by Old Town in its petition which is the subject of the first appeal. It is unnecessary therefore to determine whether the new petition was barred because the first action, No. 57705, although abated, was still pending (Code Civ. Proc., § 430, subd. 3; see *W. R. Grace & Co.* v. *California Emp. Com.* (1944) 24 Cal.2d 720, 726-727 [151 P.2d 215]; and *Irvine* v. *Gibson* (1941) 19 Cal.2d 14, 16 [118 P.2d 812]); or whether Old Town is a "party beneficially interested" under the provisions of section 1086 of the Code of Civil Procedure. (Cf. *Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]; with *Baldwin-Lima-Hamilton Corp.* v. *Superior Court, supra,* 208 Cal.App.2d 803, 824-825 and *Judson Pacific-Murphy Corp.* v. *Durkee, supra,* 144 Cal.App.2d 377 where actions brought by an unsuccessful bidder were entertained although it was determined, in each case, that he had no right to a contract.) Inquiry may also be pretermitted on the question of whether the matter is rendered moot because the city has approved the required amendment to the redevelopment plan and the disposition of the property to the successful developer. (See *Roscoe* v. *Goodale* (1951) 105 Cal.App.2d 271, 273 [232 P.2d 879]; and 3 Witkin, Cal. Procedure (1954) Appeal, § 163, p. 2352.) Nor is it necessary to determine whether there is any curative legislation which precludes further prosecution of the first action. (See §§ 33500-33503; Code Civ. Proc., §§ 860-870; *Community Redevelopment Agency* v. *Superior Court* (1967) 248 Cal.App.2d 164, 168-169 [56 Cal.Rptr. 201]; *Sibbet* v. *Board of Directors* (1965) 237 Cal.App.2d 731, 732 [47 Cal.Rptr. 335]; and *Gleason* v. *City of Santa Monica* (1962) 207 Cal.App.2d 458, 463 [24 Cal. Rptr. 656].)

*Right to Damages*

From the analysis set forth above of the provisions of the governing statute, the terms of the "Developer's Packet" and the alleged acts of the parties, it is clear that the agency and its members and directors have properly exercised their authorized discretion and cannot be subjected to a claim for damages by reason of any injury allegedly resulting from such action.

Section 818.2 of the Government Code provides: "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." "Enactment" includes, "ordinance or regulation" and "is intended to refer to all measures of a formal legislative or quasi-legislative nature" (see § 810.6 and Law Revision Com. Rep. comment thereon.) " 'Regulation' means a rule, regulation, order or standard, having the force of law, adopted by . . . a public entity pursuant to authority vested by constitution, . . ." (§ 811.6.)

Section 818.4 provides: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

The agency cannot be held liable for the consequential results of the adoption of the resolution finding that the proposal of Custom House Associates is the only qualified proposal.

Section 820.2 of that Code provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

This immunity for discretionary acts is more specifically referred to in the sections which follow. (See Gov. Code, §§ 820.4-822.2.)[10]

---

[10]The following sections are pertinent to this discussion: § 821: "A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment."

§ 821.2: "A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval,

The members of the agency, and its executive director cannot be held liable for the action expressed in the resolution under attack; nor can Faustman be so held, insofar as it is alleged he acted as an employee-consultant of the city, or employee-panel member of the agency.

Old Town seeks to recover for breach of contract, which is not covered by the immunities which have been noted. (See Gov. Code, § 814.) It contends that the payment of $50 for a "Developer's Packet" initiated a contract whereby the agency, its members, and presumably, its executive director and Faustman, jointly and severally agreed that they would entertain Fluor-Old Town's proposal, and review, evaluate and determine its qualifications solely in respect to the adopted redevelopment plan, without any conflict of interest on the part of any consultant selected by the agency, and without any violation of the Brown Act. The developer's assignee asserts that the facts before the court demonstrate a breach of the contract in each of those particulars, and that it is therefore entitled to damages.

This analysis disregards the true purport of the terms set forth in the Developer's Packet and the principles of law to be applied. The same considerations which preclude relief in mandamus, prevent recovery in contract. Old Town's proposal was at all times subject to the right of the agency to reject any proposal.

*Souza & McCue Constr. Co.* v. *Superior Court* (1962) 57 Cal.2d 508 [20 Cal.Rptr. 634, 370 P.2d 338], recognizes that the doctrine of governmental immunity does not apply to an action on a contract. That case does not aid Old Town because here there was only an offer to receive proposals and no contract was ever effected. (See *Colorado Paving Co.* v. *Murphy* (8th Cir. 1897) 78 F. 28, 31-33 [23 C.C.A. 631], appeal dismissed (1897) 166 U.S. 719 [41 L.Ed. 1188, 17 S.Ct. 997]; *Malan Constr. Corp.* v. *Board of County Road Comrs.* (D.C. E.D. Mich. 1960) 187 F.Supp. 937, 939; 1 Antieau, Municipal Corporation Law (1966) p. 701; Rhyne, Municipal Law (1957) §§ 10-12, pp. 266-268, 10 McQuillin, Municipal

order, or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

§ 822.2: "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional unless he is guilty of actual fraud, corruption or actual malice."

Corporations (3d ed. rev. 1966) § 29.86, pp. 452-453; 43 Am.Jur., Public Works and Contracts, § 65, p. 808; Rest., Contracts, § 25, illus. 5.)

The claimant attempts to distinguish between the discretionary acts of the agency and its employees, upon which no liability can be predicated, and mandatory acts involving no discretion. (See *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375, 386 [40 Cal.Rptr. 863]; *Elder* v. *Anderson* (1962) 205 Cal.App.2d 326, 331 [23 Cal.Rptr. 48].) This argument advances from the hypotheses that the agency and its members had no discretion, other than (1) to award a contract to the only developer submitting a proposal on the authorized redevelopment plan, (2) to exclude Faustman from the review panel of experts, or (3) to consider the qualifications of the proposals in conformance with the Brown Act, and it proceeds to the conclusion that Old Town should recover for injuries resulting from the breach of the mandatory duty to so act. Reliance is placed on section 815.6 of the Government Code, which provides: 'Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.''

The claimant's reliance on this doctrine collapses with the destruction of the premise that there was a duty to accept the proposal under the adopted redevelopment plan. The facts before the court demonstrate a right to reject the plan, to proceed to amend the plan, and to negotiate for the execution of the alternate plan.

Furthermore, it is recognized that the provisions, first set forth in this portion of the opinion, upon which agency and its employees rely, create immunities free from the possible implication of liability under section 815.6. (See Law Revision Com. Rep. and Legislative Committee Comment on sections cited.)

Finally, Old Town alleges injury (see Gov. Code, § 810.8) to its reputation because the agency publicly announced it was not a qualified redeveloper. The statement is inaccurate because the resolution refers to the proposal, not the developer, Old Town's assignor, who submitted it. It also must be read in context.

The predicates of liability recognized in cases such as *Erlich* v. *Etner* (1964) 224 Cal.App.2d 69, 73 [36 Cal.Rptr. 256] (trade libel); *Uptown Enterprises* v. *Strand* (1961) 195 Cal.App.2d 45, 50-51 [15 Cal.Rptr. 486]; and *Guillory* v. *Godfrey* (1955) 134 Cal.App.2d 628, 632 [286 P.2d 474] (interference with a lawful business), are not present in this case. Even if the statements were as construed by Old Town, recovery is barred by the provisions of sections 818.8 and 822.2 of the Government Code.

No cause of action is stated against Faustman merely because he was allegedly acting for two, if not three, masters. The action which affected Old Town's assignor was taken by the agency not the consultant. There are no allegations to show that Faustman acted to interfere with an existing or reasonably expectant contract right. (Cf. *California Auto Court Assn.* v. *Cohn* (1950) 98 Cal.App.2d 145, 148-150 [219 P.2d 511]; with *Campbell* v. *Rayburn* (1954) 129 Cal.App.2d 232, 234-235 [276 P.2d 671]; and see 2 Witkin, Summary of Cal. Law (1960) Torts, §§ 154-158, pp. 1329-1334.) In fact, there is nothing to show that he did other than voice honest convictions, which were apparently well known to all concerned through his service as consultant to the city.

The trial court properly granted the motion for judgment on the pleadings.

In the mandamus action (1 Civ. 22557) the order denying the petition (for peremptory writ of mandate) is affirmed. In the damage action (1 Civ. 23269) the appeal from the order granting defendant's motion for judgment on the pleadings is dismissed, and the judgment is affirmed. Let respondents recover their costs on each appeal.

Molinari, P. J., concurred.