**GEMTEL CORPORATION; Gemtel WDCH Hotel Associates, Plaintiffs–Appellants,**

v.

**COMMUNITY REDEVELOPMENT AGENCY OF the CITY OF LOS ANGELES; County of Los Angeles, Defendants–Appellees.**

No. 92–55368.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1993.

Decided May 10, 1994.

---

Orville O. Orr, Jr., Morgan, Lewis & Bockius, Los Angeles, CA, for plaintiffs-appellants.

Pamela S. Schmidt, Kane, Ballmer & Berkman, Los Angeles, CA, for defendant-appellee, Community Redevelopment Agency of the City of Los Angeles.

Lester J. Tolani, Deputy County Counsel, Los Angeles, CA, for defendant-appellee, County of Los Angeles.

Before: NOONAN, FERNANDEZ and KLEINFELD, Circuit Judges.

Opinion by Judge KLEINFELD.

KLEINFELD, Circuit Judge:

Gemtel sued the Community Redevelopment Agency and the County of Los Angeles for injunctive, declaratory and damages relief for violating federal rights. The action was dismissed for lack of jurisdiction, as moot in some respects and unripe in others. We affirm, though not entirely on the same grounds.

### Facts

Lillian Disney, widow of Walt Disney, donated $50 million for a concert hall in the Bunker Hill area of Los Angeles. The Community Redevelopment Agency and Mrs. Disney's foundation decided that a luxury hotel would fit well into the development. They and Gemtel, a developer, negotiated toward building a luxury hotel on the Agency site, to be operated by Ritz–Carlton. The County of Los Angeles, to formalize the arrangement properly under California law, issued a "request for proposals," to which only Gemtel responded.

The deal fell apart when the Agency issued a draft "Policy on Employment Opportunities for Service Employees" which would apply to the development. The policy would require the hotel to pay "prevailing rates of wages and benefits" and provide a "basic level of working conditions." The wages and benefits would have to be "not less than the lowest rate" provided in any collective bargaining agreements covering any such employees, among other standards. Generally the conditions of employment and resolution of any grievances were to be supervised by the Agency.

The request for proposals had not said anything about such a labor policy. When the request for proposals was issued, Gemtel had already signed a "letter of intent" with the Disney foundation to develop the hotel. The County, though, never signed a contract with Gemtel. When, a few months later, the County and the Agency executed a contract with the Disney foundation, the contract required that any hotel developer be bound by the service employees policy which "the Agency is currently formulating." The Agency had not yet concluded its work on

the final terms of the policy, and the policy could not go into effect until and unless the Agency obtained approval for it from the Los Angeles City Council. Thus it was impossible to say exactly what the policy would be, but Gemtel would have to subject the Ritz–Carlton to the policy for its employees, whatever it turned out to be, if such a policy was adopted and did not exempt the Ritz–Carlton on this site.

The request for proposals was not an offer of a contract. It expressly so provided:

> The County reserves the right, at its sole discretion, to reject any and all offers for any reason or no reason. The County reserves the right to consider factors other than economic factors in its selection. Upon selection of the potential developer, the County will enter into a one hundred and twenty (120) day period of exclusive negotiations to negotiate the terms and conditions of the ground lease or ground leases, as may be appropriate. If an agreement is not reached, the County at its sole option, may then select another proposer with whom to negotiate.

The request did not include any provisions for reimbursing the expenses of bid preparation for any unsuccessful bidder. Gemtel alleged in its complaint that it spent over $2 million planning the hotel project.

Gemtel and the Ritz–Carlton chose not to proceed if they would be bound by the service employee policy. In April of 1991 the County terminated negotiations, subject to reopening them if the parties reached agreement on the labor policy before an imminent Agency meeting. Meanwhile, in June, Mrs. Disney wrote that she would withdraw her $50 million gift if construction did not start by the end of the year or beginning of 1992. The Agency and the Disney foundation then redesigned the project without the hotel.

By February of 1992, when the district court heard the motions, the Agency had decided to proceed with the concert hall development without a hotel. The County Board of Supervisors had approved the design in December. The project had been redesigned to exclude the hotel. No one else was hired to develop the hotel. It was cancelled.

## Analysis

■ Gemtel's theory of suit was that the County and the Agency, by imposing wage, hour and benefit requirements for the prospective hotel workers, violated ERISA and the National Labor Relations Act. Gemtel claimed entitlement to injunctive, declaratory and damages relief under 42 U.S.C. § 1983, for violation of federal statutory rights based on federal preemption of the labor relations and benefits laws the County sought to impose. The district court ruled that the claims were moot, because the hotel was cancelled. The court also found that. the terms of the service employee policy were not ripe for adjudication because no final policy had yet been adopted. It therefore dismissed the complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[1]

### 1. Mootness.

■ The basis for the district court's determination of mootness was that once the County and the Agency decided to drop the hotel from the plan, the violations of federal labor and ERISA law involving hotel employees would no longer take place. The district court treated this as a voluntary cessation with no reasonable likelihood of recurrence and eradication of the effects of the violation under *County of Los Angeles v. Davis,* 440

---

**1.** While the district court stated that it was dismissing because "plaintiffs have failed to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6), it is clear from the district court's rationale that it was dismissing for lack of jurisdiction. The district court concluded: "Since the issues raised by plaintiffs are both moot and not ripe for judicial review, this action does not present a case or controversy on which the Court could constitutionally render a decision."

The court properly considered various public documents submitted by the County and the Redevelopment Agency, in adjudicating jurisdiction. This did not convert the motion to dismiss to a motion for summary judgment. "[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986).

U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). We review de novo. *Coverdell v. Department of Social & Health Services,* 834 F.2d 758, 766 (9th Cir.1987).

There was a serious question of whether the County and the Agency could impose the service employee policy on developers with whom they did business. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989); *Associated Builders & Contractors, Inc. v. City of Seward,* 966 F.2d 492 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1577, 123 L.Ed.2d 146 (1993). The district court did not reach this substantive issue of law. Neither do we. We assume without deciding, for purposes of the mootness discussion below, that the County and the Agency could not legally require the developer to pay "the prevailing wage" and benefits and otherwise manage the hotel's labor relations as it proposed to do in the draft policy.

■ We conclude that the claims for injunctive and declaratory relief were indeed moot. Once the County and the Agency had irrevocably decided to drop the hotel, such relief could not prevent harm to Gemtel. There could no longer be any harm to Gemtel from the service employee policy, because there would be no hotel. Because the County and the Agency had dropped the hotel, not just substituted another developer, no injunction could prevent harm. Even assuming, for purposes of discussion, that the labor policy was an illegal interference in federally preempted areas, nevertheless the County had reserved the right "for any reason or no reason" to decide not to proceed at all, and that is what it did.

This was not a case where the County was "free to return to [its] old ways." *Cf. United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). No other hotel was going to be built in the Bunker Hill project. Gemtel argues that the district court should have treated the likelihood of future harm as a question of fact, but that is incorrect. Gemtel had the burden of demonstrating jurisdiction, in the face of the apparent mootness of the claim, and put forward no evidence of any reasonable likelihood that the hotel would be built. Both *Davis* conditions were satisfied, because there was no reasonable likelihood that Gemtel and the Ritz–Carlton would be subjected to the Agency labor policy, and any effect of imposing the policy on them was completely and totally eradicated by elimination of the hotel project. The district court properly found Gemtel's declaratory and injunctive relief claims to be moot.

■ Damages relief, though, is not moot. If an unlawful Agency labor policy killed a project which otherwise would have gone forward, then damages relief could redress the financial injury which Gemtel suffered. Gemtel evidently was to be the sole respondent on this request for a proposal to build a luxury hotel on County land next to the concert hall, and alleges that it spent $2 million responding. Even though the hotel is dead, so Gemtel will never have to comply with the labor policy, refusal to proceed with the proposal because of Gemtel's refusal to comply with an unlawful policy leaves a live controversy over Gemtel's entitlement to damages. *See City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 478 n. 1, 109 S.Ct. 706, 713 n. 1, 102 L.Ed.2d 854 (1989); *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir.1991).

2. Ripeness.

■ Nor is the claim for damages unripe. We review ripeness de novo. *Municipality of Anchorage v. United States,* 980 F.2d 1320, 1323 (9th Cir.1992). Ripeness analysis has two prongs: the fitness of the issue for judicial review and the hardship to the parties if review is withheld. *Chavez v. Director, Office of Workers Compensation Programs,* 961 F.2d 1409, 1414 (9th Cir. 1992). Review is difficult, raising an apparent ripeness problem, because the labor regulation challenged was only a preliminary unapproved draft, and we cannot know what if anything the City Council would have approved. But damages, if any, have already accrued. It is hard to see how a claim for damages could be unripe. Either a cause of action has accrued, so it is ripe, or it has not yet accrued, so the complaint fails to state a claim upon which relief can be granted. The

harm to Gemtel was complete when the project was redesigned to kill the hotel. The exact terms of the labor policy were not what caused the damages. The damages resulted from there being a demand that the developer comply with some labor policy to be completed and imposed later, Gemtel's refusal, and the redesign of the project. "Ripeness is peculiarly a question of timing." *American–Arab Anti–Discrimination Committee v. Thornburgh*, 970 F.2d 501, 510 (9th Cir.1991) (internal quotation and citation omitted). Because resolution of Gemtel's claim does not depend on any future factual developments, the claim is ripe.

3. Failure to state a claim.

■ We nevertheless conclude, as defendants urged below, that the complaint was properly dismissed because it failed to state a claim upon which relief could be granted. Although the district court did not reach this issue, we may affirm the district court's dismissal on any ground supported by the record. *United States v. Washington*, 969 F.2d 752, 755 (9th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993). We conclude that the district court correctly dismissed Gemtel's claim, because Gemtel has failed to state a claim for damages upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). Gemtel has not alleged an injury that is compensable under 42 U.S.C. § 1983.

■ Gemtel failed to state a claim upon which relief could be granted because it had no right of which it was deprived. The complaint alleges that the County and the Agency breached their "duty to deal fairly ... by materially altering the terms of the proposal process, well after the fact, by demanding adherence to the Policy." But no breach of contract is claimed. The right claimed for Gemtel was "to complete their proposal" and "to participate in the Bunker Hill Project by developing and operating a hotel under a legal contract." As Gemtel's brief puts it, the County and the Agency "unlawfully deprived Gemtel of its right to consummate a proposal."

This claim was not one upon which relief could be granted because Gemtel had no right to enter into a contract. The request for proposals was not an offer. It was a solicitation of offers. This was expressly established by the language, "[t]he County reserves the right, at its sole discretion, to reject any and all offers for any reason or no reason." Suppose that the actual reason for terminating the project was, as Gemtel might be able to prove, that the County did not want to allow the hotel to be built into the development, unless it could impose labor and pension plan conditions in ways violative of federal statutes. Still, the violation of law never happened. At worst, the County decided not to go ahead at all, if it could not proceed in the arguably unlawful way it preferred. This could give rise to a claim only if Gemtel had a right to have the County proceed. Under California law, when a municipality makes a request for proposals and reserves the right to reject any and all of them for any or no reason, a developer "has no legally cognizable cause for complaint" if its proposal is rejected. *Old Town Dev. Corp. v. Urban Renewal Agency*, 249 Cal. App.2d 313, 57 Cal.Rptr. 426, 437 (1967). Until Gemtel's proposal was accepted, an event which did not occur, "there [was] no contractual relationship." *Pacific Architects Collaborative v. Department of Employment Dev.*, 100 Cal.App.3d 110, 166 Cal.Rptr. 184, 189 (1979). The County had a statutory right to "reject any and all bids or plans and proposals submitted." Cal.Gov't Code § 25515.2(h).

This is not to say that no section 1983 claim could ever arise from any rejection of a proposal made in response to a solicitation for proposals. We need not decide the more difficult case which might arise had the County gone ahead with the hotel, choosing another developer which agreed to comply with the putatively illegal policy. *Cf. Glenwood Bridge, Inc.*, 940 F.2d at 370–71. Nor need we decide the more difficult case of a municipality insisting upon an illegality which plainly gives rise to a private cause of action by the developer, such as racial discrimination. *Cf. J.A. Croson Co.*, 488 U.S. at 477, 109 S.Ct. at 713. In the case at bar, the constitutional tort is argued as arising under the Supremacy Clause by virtue of federal preemption, but the Supremacy Clause does not, of its own force, create rights enforce-

able under section 1983. *Golden State Transit Corp.*, 493 U.S. at 107, 110 S.Ct. at 449. We have found no case in which a party in the position of Gemtel has been held to have a right arising out of ERISA or labor law preemption enforceable in a section 1983 claim for damages. The closest seems to be *Glenwood Bridge*, but that is a case where the municipality sought to proceed with the project with another, more compliant bidder, not one where it decided to abandon the project rather than proceed in a manner arguably violative of federal law. 940 F.2d at 368. The distinction between proceeding with a project in a manner violative of federal law, and abandoning a project rather than proceeding, makes a difference. Here, the municipality did not break the law. It avoided the activity in which it arguably proposed to break the law.

AFFIRMED.