42 F.3d 1404
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Byron Charles WALKER, Petitioner-Appellant,
v.
CITY OF LOMPOC; Brice Griffith; Peggy Davis, Defendants-Appellees.
Byron Charles WALKER, Plaintiff-Appellant,
v.
CITY OF LOMPOC; Brice Griffith, individually and in his
capacity as a Lompoc Police Officer; PEGGY DAVIS; H.R.
MORGAN, individually and in his official capacity as an
employee of the City of Lompoc, Defendants-Appellees.
 Nos. 93-55882, 94-55442.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1994.
Decided Dec. 7, 1994.
 
 1
 Before: D.W. NELSON, NORRIS, and BOGGS,* Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 These appeals consist of two separately filed cases, No. 93-55882 (equitable action) and No. 94-55442 (merits action). The equitable action was filed by Walker with the assistance of counsel, seeking a declaration that Walker could lawfully assign his Sec. 1988 attorney's fee rights to his lawyer and asking for a declaration and injunction against the defendants' making any settlement offers contingent upon waiver of the Sec. 1988 fees. The merits action was filed the same day by Walker in pro per pursuant to 42 U.S.C. Sec. 1983, alleging false arrest and imprisonment. The equitable action was dismissed for lack of justiciability and on case management grounds. The plaintiff's in pro per merits case was later dismissed for failure to prosecute. We affirm both dismissals.
 
 Facts
 
 4
 Walker alleges that he was wrongly arrested and jailed on charges of child molestation in January, 1992. He alleges that an elementary investigation of the facts would have revealed his innocence and that the police attempted to interfere with his defense of the case. The charges were eventually dropped after Walker had spent 56 days in jail.
 
 
 5
 Walker states that he contacted at least 14 lawyers in an attempt to secure representation to bring a Sec. 1983 action, but was turned down by all of them. He finally contacted Mitchell, who was willing to represent Walker only if he could be assured of getting attorney's fees under Sec. 1988. Mitchell was concerned that the City might make a settlement offer contingent upon waiver of those fees and that he would have to counsel his client to accept the settlement pursuant to his ethical duties. To avoid this problem, Mitchell wanted Walker to assign all Sec. 1988 rights to him. However, Mitchell was unsure of whether such an assignment would be upheld in court. Mitchell refused to represent Walker until the assignability issue had been resolved, fearful of not being able to withdraw his representation if the court decided the issue against him. So, on March 19, 1993, Mitchell filed the equitable action on Walker's behalf, naming the City and police officers as defendants, seeking a declaration that the fee arrangement was lawful and an injunction against settlement offers contingent upon fee waiver. Because the statute of limitations was running short, Walker filed an in pro per Sec. 1983 action on that same day, apparently hoping that the equitable action would be resolved quickly in his favor so that Mitchell would then file an appearance in the merits action.
 
 
 6
 The district court granted the City's motion to dismiss the equitable action for lack of justiciability and on "case management" grounds on May 10, 1993. E.R. at Tab 6. The court held that there was no current controversy between the parties about the waiver of Sec. 1988 fees and might never be if no such offer was made. The court further stated that if such a controversy arose, it could be raised in the merits action. Walker appealed this order through his lawyer.
 
 
 7
 Meanwhile, Walker continued to proceed in his Sec. 1983 action without counsel. In April, Walker moved and Mitchell filed a change of address in Walker's in pro per action, but continued to refuse to represent him. After the equitable action was dismissed, Walker filed a petition for a stay in his in pro per action and for appointment of counsel. Both requests were denied on June 8, 1993.
 
 
 8
 In August, the City served interrogatories on Walker. Walker never responded. A motion to compel and for sanctions was filed in November. The court issued a show cause order, requiring Walker to submit an explanation in writing by December 17, 1993. Walker did not respond. On January 5, 1994, the court issued an order compelling Walker to answer the interrogatories and assessing a $1,750 sanction against him. On that same day, the court sua sponte issued an order for Walker to show cause why his case should not be dismissed for failure to prosecute and for failure to comply with Local Rule 6.2, which requires the parties to meet early on in the litigation and file a report of that meeting with the court. Although he was given over a month to respond in writing, Walker did not obey the order to answer the interrogatories, did not pay the sanction and did not respond to the order to show cause. On February 10, 1994, the district court dismissed the merits action. On March 15, 1994, Mitchell filed a Notice of Appeal on behalf of Walker.
 
 
 9
 * Dismissal of Equitable Action for Lack of Justiciability
 
 
 10
 Walker argues that the district court wrongly dismissed the equitable action for failing to present a "case" or "controversy" under Article III. We review the district court's dismissal de novo. See Gemtel Corp. v. Community Redevelopment Agency, 23 F.3d 1542, 1545 (9th Cir.1994); Ellis v. City of La Mesa, 990 F.2d 1518, 1523 (9th Cir.1993), cert. denied, 114 S.Ct. 2707 (1994).
 
 
 11
 Article III's case or controversy requirement has been elaborated by the overlapping doctrines of standing, ripeness, and the rule against advisory opinions. The Supreme Court's standing doctrine requires a plaintiff to "allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973). That the relevant injury has not yet occurred is not an absolute bar to jurisdiction so long as the plaintiff is "immediately in danger of sustaining some direct injury." Massachusetts v. Mellon, 262 U.S. 447, 488 (1923). The threat of injury must be "real and immediate" and not "conjectural" or "hypothetical." See O'Shea v. Littleton, 414 U.S. 488, 494 (1974).
 
 
 12
 The doctrine of ripeness is related to standing in that it requires that a future, potential threat of injury must ripen into a "real and immediate" threat that is not "conjectural" or "hypothetical." See Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 81 (1977). The same concerns are reflected in the rule against advisory opinions, which prohibits courts from issuing "an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937).
 
 
 13
 Walker's equitable action presented precisely this kind of hypothetical controversy. A controversy would only arise if Mitchell in fact decided to represent Walker and filed an appearance in the merits action, if the City then decided to make a settlement offer, and if the settlement offer contained a fee waiver provision. Such a scenario was certainly possible, but was by no means certain. As the district court noted, the defendants might have had no interest in settling at all or no interest in the waiver of attorney's fees. The harm Walker and Mitchell feared was not sufficiently imminent to satisfy the standards of Article III.
 
 
 14
 Walker argues, however, that the dismissal improperly relied upon a finding of fact--the lack of an imminent threat--that contradicted allegations in the complaint. Where an issue of justiciability is decided on the pleadings, the test is whether the facts alleged in the pleadings state a case or controversy. See Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136-37 (1992). The complaint alleged that "the defendants assert and will assert that the transfer of [Sec. 1988] rights is invalid as a matter of law." E.R. at Tab 1, p 12. The complaint also refers to the "defendants' threat to seek to invalidate the transfer" of Sec. 1988 rights. Id. at p 13. Walker argues that the court must presume that the defendants will seek to invalidate the transfer, and that this alleged threat is sufficient to create a justiciable controversy at the pleading stage.
 
 
 15
 Even accepting the complaint's allegations as true, however, they are not enough to show that the threatened injury was sufficiently imminent. That the defendants assert an adverse view of the law does not necessarily imply that they will act upon it. As stated before, they may have no intention of settling the lawsuit. The "threat to seek to invalidate" the fee arrangement may never be carried out or may be delayed for some time.[1]
 
 
 16
 Walker argues, however, that if he is not granted the relief now, the case will never become ripe. Without the assurances of a declaration, Mitchell will not represent Walker and, therefore, no attorney's fees will ever be at issue in the merits action. While one can sympathize with Walker's situation, the fact that a deal may fall through because the parties are uncertain whether their planned contract is enforceable does not create a "case" or "controversy" within the meaning of Article III. Nor can the policies underlying Sec. 1988 overcome the constitutional prohibition against issuing advisory opinions.
 
 II
 
 17
 Dismissal of the Merits Action for Failure to Prosecute
 
 
 18
 "Dismissal is a harsh penalty and is to be imposed only in extreme circumstances." Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir.1986). It is only available as a response to unreasonable delay. Id. In determining whether the delay is unreasonable and whether dismissal is appropriate, the district court must weigh several factors:
 
 
 19
 (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition on the merits; (5) the availability of less drastic sanctions.
 
 
 20
 Id. In connection with this last consideration, this court has held that the district judges "have an obligation to warn the plaintiff that dismissal is imminent." Johnson v. United States Dep't of Treasury, 939 F.2d 820, 825 (9th Cir.1991) (internal quotation marks and citations omitted).
 
 
 21
 When the district court fails to document its consideration of the above factors, as is the case here, the appellate court makes an independent review of the record. Henderson, 779 F.2d at 1424. The judgment of the trial court will only be disturbed for abuse of discretion. Id. at 1423.
 
 
 22
 Walker argues that the district court abused its discretion because: (1) the delay in this case was not so unreasonable as to make dismissal an appropriate sanction; (2) the district court failed to give sufficient warning that dismissal was imminent; and (3) the district court failed to consider or make use of alternate, less drastic measures.
 
 
 23
 * Unreasonable Delay
 
 
 24
 The plaintiff argues that a delay of less than a year is not unreasonable, considering the lack of prejudice to the defendants. The courts have recognized that the unreasonableness of delay is closely linked to its prejudice on the defendant. Citizens Utilities Co. v. AT & T, 595 F.2d 1171, 1174 (9th Cir.) ("whether actual prejudice exists may be an important factor in deciding whether a given delay is 'unreasonable' "), cert. denied, 444 U.S. 931 (1979); Nealy v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1280 (9th Cir.1980) (delay and prejudice are often integrally related). The City, however, argues that a showing of actual prejudice is not necessary. It cites Alexander v. Pacific Maritime Ass'n, 434 F.2d 281, 283 (9th Cir.1970), cert. denied, 401 U.S. 1009 (1971), for the proposition that "[u]nreasonable delay creates a presumption of injury to [the defendants'] defenses." See also States Steam Ship Co. v. Phillippine Air Lines, 426 F.2d 803, 804 (9th Cir.1970). This proposition, however, was later reconsidered in Nealy, which held that the court must take into account the plaintiff's excuse for delay so that "delay alone should not be deemed to create a 'presumption of prejudice'...." 662 F.2d at 1280. We held that the greater the prejudice suffered by the defendant, the better the plaintiff's excuse for delay must be. Id.
 
 
 25
 Thus, we must examine the actual prejudice suffered by the City and the strength of Walker's excuse for delay. The City alleges that it was prejudiced in that it was unable to proceed with discovery to prepare its defenses. Of course, so long as Walker failed to take any action, no trial could be held and the defendants would surely have a right to a continuance to complete discovery before being forced to present their case. The true prejudice, then, is the danger of evidence being lost over the course of the eight months Walker did not participate in the litigation.
 
 
 26
 Walker's excuse for inaction is that he moved several times and never received any of the court papers. Appellant's Brief at 6. Even assuming this fact not documented in the record,[2] Walker had a duty to keep in touch with the court. Even if he wasn't aware of any rule requiring him to do so, common sense dictates that if he wanted to proceed with the litigation and was not otherwise in touch with the court, he should have let the court know where to reach him in case something happened in the case.
 
 
 27
 Since neither the showing of prejudice nor the showing of excuse is very strong, we cannot conclude that the district court abused its discretion in finding that the weight of these considerations supported dismissal.
 
 B
 Failure to Warn
 
 28
 Walker claims that he was not sufficiently warned that dismissal was imminent. However, he was sent a show cause order that explicitly warned him that if he did not respond, the case would likely be dismissed. E.R. at Tab H. Walker argues that he never received the warning because the clerk's office did not have a current address. However, this was entirely Walker's own fault. The court did the best it could to give Walker warning. If this warning was not sufficient, it is unclear how a district court could ever dismiss a case in which the plaintiff just disappears.
 
 C
 Failure to Consider Lesser Sanctions
 
 29
 Finally, Walker argues that the district court failed to consider lesser sanctions before dismissing his case. This claim has no merit. Walker had already been sanctioned once for his inaction. The court had issued an order to show cause why he should not be sanctioned for failure to answer interrogatories and, when he did not respond, sanctioned him $1,750. E.R. at Tabs F, G. By the time the court ordered dismissal, Walker had failed to respond to the interrogatories, two orders to show cause, an order to pay sanctions and an order to comply with discovery requests. There was no point in issuing further sanctions when the plaintiff had not responded to the ones already issued.
 
 
 30
 Because he chose to appeal[3] rather than attempt to reopen the judgement, this court's extremely deferential standard of review places a heavy burden on him. Given these facts, we cannot conclude that the district court abused its discretion in dismissing Walker's complaint.
 
 
 31
 The district court's dismissals of both actions are AFFIRMED.
 
 
 
 *
 Honorable Danny J. Boggs, United States Circuit Judge, Sixth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Moreover, even if the plaintiff had sufficiently alleged an imminent threat of injury to support jurisdiction, because all of the relief requested was discretionary, the court could have reasonably found that the equitable considerations of ripeness counseled against granting relief until an actual, coercive settlement offer had been made. In such a case, dismissal would have been proper, even if not because of lack of justiciability. See Abbot Laboratories v. Gardner, 387 U.S. 136, 148 (1967)
 
 
 [2]
 Walker argues that because his excuse is not documented in the record, this court should remand the case for an evidentiary hearing. We reject this suggestion. By choosing to appeal, rather than move to reopen the judgement, Walker limited himself to showing that the district court erred based on the facts in the record
 
 
 [3]
 Walker states that he did so, in part, out of fear of losing his right to appeal because the time to appeal might run out before the motion was heard. This fear is unfounded. F.R.A.P. Rule 4(a)(4)(F) tolls the time for appeals while a motion to reopen judgement is pending under Fed.R.Civ.P. 60