124 F.3d 210
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CERAMIC CORP. of America, CAFFCO Import, Inc.; CAFFCO
International Inc., CCC Associates, Inc.; Grand
Basket Co.; Weyerhauser Co., et al.,
Plaintiffs-Appellants,
v.
INKA MARITIME Corporation Inc., a corporation, in personam;
NSB Niederelbeschiffahrtsgesellschaft mbH & Co., a
corporation, in personam; Deutsche Seereederei Rostock GmbH
personam; CHO Yang Shipping Co., Ltd., a corporation, in
personam; The Vessel M/V Bremen Senator, her engines,
tackle, etc., in rem, Defendants-Appellees.
 No. 96-55178.
 United States Court of Appeals, Ninth Circuit.
 Sept. 22, 1997.
Argued and Submitted June 3, 1997.
 
 Appeal from the United States District Court for the Central District of California David V. Kenyon, District Judge, Presiding
 Before SCHROEDER, BRUNETTI and SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Ceramic Corporation of America and other owners and underwriters of cargo interests on the M/V Bremen Senator appeal the district court's judgment for Defendants after a bench trial in Ceramic's action under the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1301-1315 (COGSA). Appellants sought indemnification for their general average contributions made to satisfy the ship's liability for an allision with an oil terminal jetty in Japanese waters. Appellants alleged the allision was caused by an unseaworthy condition, and that Defendants had failed to exercise due diligence to make the ship seaworthy. See 46 U.S.C. § 1304(1). Appellants also claimed Defendant NSB was liable in negligence. We affirm in part, vacate in part, and remand.
 
 I. Unseaworthiness
 
 3
 We affirm the district court's conclusions that Plaintiffs failed to show an unseaworthy condition and that Defendants exercised due diligence. The court's essential findings of fact underlying those conclusions are not clearly erroneous. When conflicting evidence before the factfinder presents two plausible but conflicting views, the factfinder's choice of one of them cannot be clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985).
 
 
 4
 Appellants' first contention is that Captain Krogmann's decision not to post a bow look-out created an unseaworthy condition that caused the allision. The district court did not clearly err, however, in finding that a bow look-out would not have made a difference. First, Appellants have not clearly established that a bow look-out could have accurately estimated the distance to shore. Second, Appellants' own evidence establishes that the ship could not have been more than half a mile away, as Appellants contend. If, as Appellants argue, Captain Krogmann's statement that he could not see the surface anymore meant that the shore was within the Bremen Senator's dead zone, the ship had to have been within 1,787 feet of the island when the Captain initiated his step-crash maneuver. Finally, the district court heard sufficient expert testimony regarding the ship's steerage and the Japanese maritime board's questionable assumptions to enable it to reject the Japanese maritime board's finding that the allision could have been avoided.
 
 
 5
 Appellants also contend that the failure to post a bow look-out was a statutory violation which calls for application of the Pennsylvania Rule. The 1972 COLREGS cited by Appellants, however, were enacted by treaty and proclamation, not by statute. See, e.g., 33 U.S.C. following section 1602. This court has indicated unwillingness to apply the Pennsylvania Rule to violations of treaties, rather than statutes. See In re Damodar Bulk Carriers 903 F.2d 675, 688 9th Cir.1990). Plaintiffs have not shown that the COLREGS were statutorily enacted in any of the other relevant countries (i.e., Germany, Japan, or Panama).
 
 
 6
 With regard to Appellants' other allegations of unseaworthiness, the district court did not clearly err. The ship owners exercised due diligence by relying on Columbia Shipping Management, an internationally reputable firm, to staff the ship with competent crew. There was ample expert testimony that the Captain acted properly in deciding not to rely on radar when visibility was clear, and that the Bremen Senator's speed of 13 knots was proper. II. NSB'S Liability in Negligence
 
 
 7
 The district court found that Inka was the owner of the ship, and NSB was the manager. See Findings of Fact Nos. 3 & 4. NSB is therefore not a "carrier" entitled to COGSA defenses. See 46 U.S.C § 1301(a) (defining "carrier" to include only owners and charterers). Although the district court stated that the parties had stipulated that NSB was a "carrier" entitled to COGSA defenses, see Conclusion of Law No. 1, the record reflects no such stipulation. On the contrary, whether NSB was an owner entitled to COGSA defenses was an issue specifically reserved for trial in the pretrial order. See Pretrial Order at 14, p 8(a). Moreover, whether NSB is a "carrier" is a purely legal issue. If NSB is neither an owner nor a charterer, it is not a "carrier," see 46 U.S.C. § 1301(a), regardless of any stipulation by the parties.
 
 
 8
 NSB argues, and the dissent agrees, that the district court had sufficient factual grounds to determine that NSB was the "managing owner" of the M/V Bremer Senator. The district court made no such determination, however. The contention that NSB was the "managing owner" is made by NSB for the first time on appeal. The district court, in findings of fact drafted by Defendants, found that NSB was "the manager" and that INKA was "the owner" of the Bremen Senator. The record evidence presented by NSB does not suffice to show that the district court's findings were clearly erroneous.
 
 
 9
 Paragraph 43A of the Charter Party Agreement also does not confer "carrier" status on NSB. Paragraph 43A only authorizes NSB to sign bills of lading on the owners' behalf; it does not make NSB itself either an owner or charterer.
 
 
 10
 NSB is therefore not entitled to COGSA defenses unless those defenses have been extended contractually. The district court concluded that the New Jason Clause in the bills of lading extended COGSA defenses to NSB. See Conclusion of Law No. 3. New Jason Clauses, however, do not deal with COGSA defenses, but rather govern shippers' liability for general average contributions. See, e.g., Damodar Bulk Carriers, 903 F.2d at 688; accord cases cited in Conclusion of Law No. 3.
 
 
 11
 NSB argues that it may benefit from COGSA defenses under the Himalaya Clause, not the New Jason Clause. The specific COGSA defense to which NSB claims entitlement is exoneration from liability for losses caused by negligence or errors in navigation, under 46 U.S.C. § 1304(2)(a). Our law is clear, however, that Himalaya Clauses which "purport[ ] wholly to immunize a non-carrier from liability for its negligence [are] repugnant to traditional law and to sound policy." Grace Line v. Todd Shipyards, 500 F.2d 361, 373 (9th Cir.1974). The Himalaya Clause in this case is therefore unenforceable. The cases Defendants cite upholding Himalaya Clauses are unavailing; those cases involved COGSA's per-package limitation of liability and its one-year statute of limitations, not its complete shield from liability for negligence. See Mori Seiki USA v. M/V Alligator Triumph, 990 F.2d 444, 450 (9th Cir.1993) (per-package limitation); Taisho Marine & Fire Ins. Co. v. The Gladiolus, 762 F.2d 1364, 1366 (9th Cir.1985) (statute of limitations); see also Grace Line, 500 F.2d at 373 (distinguishing between limitations on liability, which may validly be extended in Himalaya Clauses, and exemption from negligence liability, which may not be so extended).
 
 
 12
 Because the Himalaya Clause in this case is void as against public policy, the district court clearly erred in concluding that NSB was contractually entitled to COGSA defenses.
 
 III. Conclusion
 
 13
 The district court's judgment for all Defendants other than NSB is AFFIRMED. The district court's judgment for Defendant NSB is VACATED. The case is REMANDED to the district court for consideration of Plaintiffs' negligence claim against NSB.
 
 
 14
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 15
 O'SCANNLAIN, Circuit Judge, concurring and dissenting in part:
 
 
 16
 I respectfully dissent from Part II of the court's disposition, which concludes that the district court erred in deciding that NSB was entitled to COGSA defenses. I concur in Part I of the disposition without reservation.
 
 
 17
 The record shows that the district court, after a bench trial, had factual grounds to determine that NSB is a "carrier" pursuant to COGSA and entitled to its defenses. COGSA defenses protect only owners and charterers of the ship. See 46 U.S.C. §§ 1304(1), 1304(2) (shielding "carriers"), § 1301(a) (defining "carrier"). Here, evidence exists that NSB was the "managing owner" of the M/V Bremen Senator. For Example, the record includes addenda to the charter party agreement signed by NSB for the owners "as managing owners only," (ER 422), a reference to NSB as a "ship owner" in the Sea Protest, (SER 156), and testimony from Captain Krogmann that NSB was the managing owner (ER 8).
 
 
 18
 The majority correctly points out that the district court's Finding of Fact No. 4 only states that NSB was the vessel's manager; however, this argument is nothing more than form over substance. The bottom line is that there is indeed evidence in the record to affirm the district court's final judgment. See Gemtel Corp. v. Community Redevelopment Agency, 23 F.3d 1542, 1546 (9th Cir.1994) (holding that in reviewing district court decisions an appellate court may affirm on any ground that has support in the record) (citation omitted).
 
 
 19
 I would therefore affirm the district court's judgment for all defendants, including NSB.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3