**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARCONA, INC., a California corporation,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>FARMACY BEAUTY, LLC, a New Jersey limited liability company; DAVID C. CHUNG, an individual; MARK VEEDER, an individual,<br>*Defendants-Appellees*. | No. 19-55586<br><br>D.C. No. 2:17-cv-07058-ODW-JPR<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted June 5, 2020
Pasadena, California

Filed October 1, 2020

Before: Kenneth K. Lee and Patrick J. Bumatay, Circuit
Judges, and Donald W. Molloy,* District Judge.

Opinion by Judge Lee

---

*The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

## SUMMARY[**]

### Trademark

The panel affirmed the district court's grant of summary judgment in favor of Farmacy Beauty, LLC, in a trademark counterfeiting action brought by Arcona, Inc.

Arcona alleged counterfeiting based on Farmacy's use of the trademarked term "EYE DEW" on its skincare products. The district court granted summary judgment on the ground that a reasonable consumer would not confuse Farmacy's skincare product with Arcona's because their respective packaging featured different shapes, design schemes, text, and colors.

Agreeing with other circuits, the panel held that the plain language of the Lanham Act, 15 U.S.C. § 1114, requires a likelihood of confusion for a trademark counterfeiting claim. The panel declined to presume confusion because the products were not identical. The panel held that summary judgment was proper because there was no genuine dispute of material fact about the likelihood of consumer confusion, and the district court properly compared the products as a whole, rather than limiting analysis to the identical EYE DEW marks.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

R. Joseph Trojan (argued), Dylan C. Dang, and Francis Z. Wong, Trojan Law Offices, Beverly Hills, California, for Plaintiff-Appellant.

Colin Fraser (argued), Greenberg Traurig LLP, Irvine, California; Jeffrey K. Joyner, Greenberg Traurig LLP, Los Angeles, California; for Defendants-Appellees.

**OPINION**

LEE, Circuit Judge:

Arcona, Inc. sued Farmacy Beauty for counterfeiting based on the use of the trademarked term "EYE DEW" on its skincare products. But apart from that term, these two companies' beauty products look nothing like each other, as their respective packaging features different shapes, design schemes, text, and colors. The district court granted summary judgment for Farmacy, ruling that a reasonable consumer would not confuse Farmacy's skincare product with Arcona's. The key question presented is whether a trademark counterfeiting claim requires a likelihood of confusion. We hold that the plain language of the statute requires a likelihood of confusion for a counterfeit claim. We thus affirm the grant of summary judgment.

**BACKGROUND**

In March 2015, Plaintiff-Appellant Arcona, Inc. registered the trademark "EYE DEW" for its skincare products. The trademarked phrase "consists of standard characters without claim to any particular font, style, size, or color." Arcona's EYE DEW product is an eye cream in a

tall, cylindrical, silver bottle encased in a slim, cardboard outer box. The product features the phrase "EYE DEW" and the Arcona housemark on both its bottle and outer box. Arcona sells the product mainly at Nordstrom in the United States and at Sephora in Australia and Asia.

 

In 2014, Defendant-Appellee Farmacy Beauty began developing a line of skincare products, including an eye cream. Farmacy named the eye cream "EYE DEW" after a copywriter said that the name was likely available based on "an initial online search and uspto.gov trademark lookup." Farmacy's EYE DEW product (pictured below) comes in a short, wide, white jar, along with a squarish outer box. The product features the phrase "EYE DEW" and the Farmacy house mark on both its jar and outer box.  In 2015, Farmacy began selling EYE DEW in the United States at Sephora.




In August 2016, Arcona sent Farmacy a cease-and-desist letter informing Farmacy of its "EYE DEW" trademark and demanding that Farmacy stop selling its product. The record suggests that Farmacy had never heard of Arcona and was surprised to receive the letter. The parties unsuccessfully tried to resolve the matter.

In September 2017, Arcona sued Farmacy asserting claims of (1) trademark counterfeiting, (2) trademark infringement, (3) unfair competition under Section 43(a) of the Lanham Act, (4) unfair competition under California state law, and (5) unfair competition under California common law. At Arcona's request, the district court dismissed with prejudice the trademark infringement and unfair competition claims.

The district court granted partial summary judgment for Farmacy on the counterfeiting claim. The court reasoned that the only similarity between the two products was the phrase "EYE DEW." The court also found that Arcona "present[ed] no evidence that the Farmacy house mark on the product, the dissimilar packaging, and the product itself [did] not nullify [Arcona]'s counterfeiting claim." It further held that it was "implausible that a consumer viewing [Farmacy's] EYE DEW product would be tricked into believing that product is actually one of [Arcona's] EYE DEW products."

Arcona timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc). The moving party is entitled to summary judgment upon a showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). We view the facts and inferences drawn from the facts in the nonmovant's favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987). We may affirm summary judgment on any grounds supported by the record. *Gemtel Corp. v. Cmty. Redevelopment Agency*, 23 F.3d 1542, 1546 (9th Cir.1994).

## ANALYSIS

**I. Under the Lanham Act, Farmacy is liable for counterfeiting only if Farmacy's use of Arcona's mark is likely to confuse consumers.**

Arcona's complaint against Farmacy lists "Violation of Trademark Counterfeiting Act of 1984" as its first cause-of-action. The Trademark Counterfeiting Act of 1984 criminalizes the trafficking of counterfeit trademark goods. 18 U.S.C. § 2320. The Act also amended the Lanham Act, 15 U.S.C. §§ 1501 *et seq*., to create stronger remedies for civil cases involving a counterfeit trademark. *See* 15 U.S.C. § 1117 (allowing for treble damages and attorneys' fees).

Arcona argues that it need not show a likelihood of confusion to pursue its trademark counterfeiting claim. The "starting point for interpreting a statute is the language of the

statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc*., 447 U.S. 102, 108 (1980). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016).

Here, 15 U.S.C. § 1114 establishes the cause of action for, among other things, counterfeiting and states that "[a]ny person who . . . use[s] in commerce any reproduction, *counterfeit*, copy, or colorable imitation of a registered mark . . . which such use is *likely to cause confusion*, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided." 15 U.S.C. § 1114(1)(a) (emphasis added). The plain language of the statute thus shows that "likely to cause confusion" is a requirement for a counterfeiting claim.

Perhaps recognizing that the two products look little like each other, Arcona argues that a counterfeiting claim does not require a likelihood of confusion. It points to two statutory provisions establishing various remedies for counterfeiting that do not mention "likelihood of confusion." First, 15 U.S.C. § 1116(d) allows ex parte relief to seize counterfeit goods. 15 U.S.C. § 1116.[1] Although the text of

---

[1] 15 U.S.C. § 1116(d) states in part:

**"Civil Actions Arising Out of Use of Counterfeit Marks**

**(1)(A)** In the case of a civil action arising under *section 1114(1)(a)* of this title . . . with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the court may, upon ex parte application,

that subsection does not reference "confusion" in defining "counterfeit mark," it refers to a civil action under "section 1114(1)(a)," which (as noted above) establishes the cause of action for counterfeiting and includes a likelihood of confusion requirement.     15 U.S.C.   § 1116(d)(1)(A). Second, 15 U.S.C. § 1117 authorizes statutory and treble damages for counterfeiting, and again refers to Section 1114(1)(a), which includes a likelihood of confusion requirement.  15 U.S.C. § 1117(b).**[2]**  In short, even the two counterfeiting remedies provisions cited by Arcona underscore that a defendant is liable only if use of a counterfeit is "likely to cause confusion."    15 U.S.C. § 1114(1)(a).**[3]**

---

grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods and counterfeit marks . . . ." (emphasis added).

**[2]** 15 U.S.C. § 1117(b) states in part:

**"Treble Damages for Use of Counterfeit Mark.**

In assessing damages under subsection (a) *for any violation of section 1114(1)(a) of this title* . . . in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall . . . enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of (1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services . . . ." (emphasis added).

**[3]** The district court appeared to base its ruling in part on the ground that the "EYE DEW" mark is not even a counterfeit. Section 1127

It appears that our court has not yet expressly held that a counterfeiting claim requires a likelihood of confusion. That said, Section 1114 addresses both trademark infringement and counterfeit claims, and we have repeatedly held that the plain language of Section 1114 requires a likelihood of confusion for a trademark infringement claim. *See, e.g.*, *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017). But we have not directly addressed it in the context of a counterfeit claim, perhaps because consumer confusion is generally not in dispute in most counterfeit cases. *See, e.g.*, *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, 14-CV-00609 (DDP), 2016 WL 7479317, at *6 (C.D. Cal. Dec. 29, 2016) (noting case law on counterfeit claims is "understandably thin"). For example, the use of a counterfeit Louis Vuitton trademark on a handbag is obviously intended to confuse consumers. Put another way, a counterfeit claim is merely "the 'hard core' or first degree' of trademark infringement," and there is nothing in the statutory language of Section 1114 that suggests that a counterfeit claim should be construed differently from an infringement claim. *Id.* at *5 (internal citation omitted).

Several of our decisions have followed the plain meaning of Section 1114 and have required a likelihood of confusion for claims under that section. For example, in *Westinghouse*

---

defines "counterfeit" as a "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The district court appeared to construe Section 1127 to allow a court to look beyond the mark and examine the product as a whole in determining whether the "spurious mark" is "identical with, or substantially indistinguishable" from the registered mark. We need not resolve this issue because, even if the mark is a counterfeit, no reasonable juror would find a likelihood of consumer confusion under Section 1114. *See infra* pp. 12–14.

*Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*, we held that Section 1114 was "intended to protect consumers against deceptive designations of the origin of goods, not just to prevent the duplication of trademark." 106 F.3d 894, 899 (9th Cir. 1997) (cleaned up). "Thus, the important test is whether the practice of the defendant is likely to cause confusion, not whether the defendant duplicated the plaintiff's mark." *Id.*; *see also Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) (noting that a counterfeit product is likely to "cause confusion, or to cause mistake or to deceive").

More recently, we held that "to invoke § 1117's special civil monetary remedies against counterfeiting," a plaintiff must establish, among other things, that the counterfeit mark "was likely to confuse or deceive." *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) (finding defendant's unlicensed use of plaintiff's certification mark constituted counterfeiting because it was likely to cause confusion). We required a likelihood of confusion, even though Section 1117's civil monetary remedies provision does not itself explicitly mention it and instead refers to Section 1114, which does.

Other circuits also read the statutory provisions to require a likelihood of confusion for a counterfeiting claim. *See Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 818 (5th Cir. 2019) ("Likelihood of confusion is also an element of counterfeiting."); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 315 (2d Cir. 2013) (dismissing counterfeiting claim after describing the marks and concluding that consumers would not be confused).

We thus hold that a counterfeit claim requires a showing of likelihood of confusion under Section 1114.

## II. The court will not presume consumer confusion here because the products are not identical.

Arcona makes the alternative argument that the court should presume a likelihood of confusion because Farmacy's "EYE DEW" statement is allegedly identical to Arcona's mark. But even assuming the marks are identical, there may be no presumption of consumer confusion if the products themselves are not identical. Put another way, a court must review the product as a whole in determining whether an allegedly counterfeit product will likely cause confusion.

Arcona relies heavily on a trademark infringement case, *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, which in dicta stated in "light of the virtual identity of marks, if they were used with *identical products or services*, likelihood of confusion would follow as a matter of course." 174 F.3d 1036, 1056 (9th Cir. 1999) (emphasis added) (ruling that there was no presumption of confusion because MovieBuff software was not the same product service as moviebuff.com website); *see also Stone Creek Inc.*, 875 F.3d at 432 (indicating "identical marks *paired with identical goods can be* case-dispositive" in a case involving an "exact replica" of a competitor's logo on the same sofa (emphasis added)).

Here, the products at issue are not identical, as evident by a comparison of the Arcona and Farmacy products. So *Brookfield*'s dicta has no bearing on this case. The question then becomes: Is there a factual dispute about the likelihood of confusion so that Arcona's counterfeiting claim can survive summary judgment?

**III.    Summary judgment was proper because there is no genuine dispute of material fact about the likelihood of consumer confusion.**

Finally, Arcona argues that the district court erred in comparing the products as a whole in ruling that there is no likelihood of consumer confusion.  The district court, according to Arcona, should have limited its analysis to the identical marks ("EYE DEW") only — without looking at the entire product — in assessing consumer confusion.

This court has never adopted the rigid approach advanced by Arcona.  To the contrary, this court noted that even "where there is precise identity of a complainant's and an alleged infringer's mark, there may be no consumer confusion" if, for example, "the alleged infringer is in a different geographic area or in a wholly different industry." *Brookfield*, 174 F.3d at 1055 (addressing trademark infringement claims and discussing cases in which companies or products had the same names, but there was no confusion because they competed in different geographic areas or industries).  A court should not myopically focus on only the alleged counterfeit marks to the exclusion of the entire product or even common sense.[4]   Here, while the products do compete in the same space and same geographic area, there are significant differences between the two products, and the marks should be "considered in their entirety and as they appear in the marketplace." *Id.* at 1054 (internal quotation marks omitted).

---

[4] There may be times the mark itself is so strong in the marketplace that the use of an identical mark by itself may cause consumer confusion, even if other aspects of the products are different. This is not such a case. As noted below, the mark here — "EYE DEW" — is not so strong.

As the district court explained, no reasonable consumer would be confused by these two products because the packaging, size, color, shape, and all other attributes — other than the term "EYE DEW" — are not remotely similar. For example, Farmacy's packaging looks distinct from Arcona's because it features (i) multiple pictures of the Echinacea green envy plant used in the product, (ii) a picture of the farmers, and (iii) a description of the company.

Further, it is implausible that a consumer would be deceived because the products had their respective housemarks ("Farmacy" vs. "Arcona") prominently on the packaging.  Arcona does not present evidence to dispute this, but states in a conclusory fashion that "[c]onsumers would have no way of knowing" that Arcona did not sponsor Farmacy's product.  In trademark infringement cases, the "use of a housemark can reduce the likelihood of confusion." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mtn. Prods.*, 353 F.3d 792, 810 (9th Cir. 2003); *see also Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981) ("[O]therwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer").

Courts — at least in the trademark infringement context — have also considered a third party's use of the mark in assessing likelihood of confusion.  *See Springboards*, 912 F.3d at 815, 817 (recognizing that third parties used similar and identical marks, and finding no reasonable jury could find a likelihood of confusion); *cf. M2 Software, Inc., v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005) (affirming summary judgment on trademark infringement claim and reasoning that "[u]se of similar marks by third-

party companies in the relevant industry weakens the mark at issue"). Farmacy presented evidence that other companies use the phrase "EYE DEW" in the beauty industry. This underscores that the "EYE DEW" mark is not so unique or strong.

Finally, there is no evidence that Farmacy's use of the mark "EYE DEW" was intentional. It submitted evidence that the term "EYE DEW" was meant to describe its product and was not an intentional copying of Arcona's trademark. Arcona does not dispute this evidence, but instead states without citation that Farmacy "cannot feign ignorance" of the mark because Arcona has been selling EYE DEW for over 18 years. Despite Arcona's "general, conclusory allegations of 'willfulness,'" it has produced no evidence that Farmacy intentionally copied its mark. *See Pignons*, 657 F.2d at 491 (finding no evidence of intent in a trademark infringement case). In addition, Farmacy's dissimilar packaging and rampant use of its housemark "flatly belie[s] any such notion." *See id*.

In sum, the district court properly found that there is no genuine issue of material fact that Farmacy's use of the "EYE DEW" mark would not likely cause consumer confusion.

## CONCLUSION

To sustain a trademark counterfeiting claim, a plaintiff must show a likelihood of confusion. The two products, when viewed in their entirety, do not remotely resemble each other. The district court's decision granting summary judgment for Farmacy is **AFFIRMED**.